Willem RIDDER, Lyndon C. Merkle, John T. Hurst and Gregory Devany, Plaintiffs,

v.

CITYFED FINANCIAL CORPORATION, a Delaware Corporation, Defendant.

Civ. No. 93–1676 (HLS).

United States District Court, D. New Jersey.

May 24, 1994.

Michael A. Saffer, Chapman, Henkoff, Kessler Peduto & Saffer, Roseland, NJ, for plaintiffs.

William C. Cagney, Lane & Mittendorf, Edison, NJ, for defendant.

## OPINION

SAROKIN, District Judge.

Before the court is plaintiff's motion for a preliminary injunction or, in the alternative, for summary judgment.

*Introduction*

The rash of savings and loan failures throughout the country has prompted a number of suits against officers and directors of those institutions alleging their responsibility for such failures and the concomitant losses sustained by depositors and other claimants. In many instances, as in this case, officers and directors have been promised indemnification and the advancement of defense costs if named in lawsuits arising from the performance of their duties. In those instances where the institutions have been placed in receivership or are threatened with insolvency, conflicting public policy considerations have arisen.

If agreements or by-laws to provide defense costs are not honored, the immediate effect may be to pauperize those who have been sued, even though ultimately they may not be found liable. Also, they may be denied the right to reimbursement even if they are entitled, if the institution's limited assets in the interim are dissipated to pay other claims. Furthermore, the ultimate effect of such disavowals may be the discouragement of those who would otherwise serve in these positions in the future. Knowledge that officers and directors may be required to advance their own defense costs in such actions and run the risk that they may not be reimbursed, may well have a chilling effect on the acceptance of such positions by otherwise qualified persons.

The competing considerations, however, may be even more persuasive. Most of the allegations in these matters seek to fasten blame on the officers and directors predicated upon claims of mismanagement and fraud.

Insolvency by its very nature envisions a limited fund to meet the claims of creditors. Creditors could properly contend that the limited assets should not be dissipated in defending those who are or may be responsible for the losses and ultimate insolvency. Indeed, current directors argue that the advancement of such defense costs would constitute a breach of their fiduciary duties— that priority should not be given to defending those who are charged with wrongdoing in preference to the multitude of totally innocent claimants.

■ Thus, even in the face of a clear and unambiguous legal obligation, it may not be appropriate to enforce it. Receiverships and insolvency contemplate and allow for the rejection of valid legal obligations. In this court's view, the equitable considerations which apply in considering applications for preliminary injunctive relief should apply here. The court should consider:

1) Whether the underlying claim against the officer or director is frivolous or likely to succeed;

2) Whether requiring the individual to advance defense costs constitutes irreparable injury because of that individual's inability to provide or raise the necessary funds;

3) Whether advancing defense costs causes irreparable injury to the institution or its creditors because of the depletion of the limited fund and assets available;

4) Whether if funds are advanced, their reimbursement, if required, can be guaranteed or secured;

5) What role the competing public policy considerations outlined above should play in determining whether to direct or deny the advancement of such costs.

*Background*

This suit is an action by four former officers and employees of a subsidiary of defendant CityFed Financial Services Corporation ("CityFed") to compel CityFed to advance to plaintiffs their reasonable attorneys' fees and defense costs incurred in a related action also before this court, *Resolution Trust Corp. v. Fidelity & Deposit Co. of Maryland, et al.,*

92–1003(HLS) (the "RTC action"). Plaintiffs claim that CityFed's Bylaws require it to advance to them their reasonable defense costs in the RTC action as those costs are incurred. They move for an injunction requiring CityFed to advance those fees and costs or, in the alternative, for summary judgment on the issue of CityFed's duty to advance the fees and costs.

CityFed argues in opposition that plaintiffs are not presently entitled to advancement of their attorneys' fees and defense costs because there is evidence that plaintiffs have engaged in misconduct that would vitiate their right to indemnification under CityFed's bylaws. CityFed further argues that because it is currently a defendant in numerous suits involving damage claims far exceeding the value of its total assets, and in light of the evidence that plaintiffs may have engaged in misconduct, the fiduciary duty its directors owe to shareholders and creditors allows or requires them to refrain from advancing plaintiff's attorneys' fees and defense costs at this time.[1] Having set forth this basic explanation of the motion, the court will describe the relevant portions of the complex factual history underlying this action and the related RTC action.

### The Parties

Defendant CityFed, a Delaware corporation, was from November 1984 to December 1989 a savings and loan holding company and was sole owner of City Federal Savings Bank ("City Federal"), the largest savings and loan association in New Jersey in 1988. In December 1988, City Federal was seized by the Office of Thrift Supervision ("OTS"). Declaration of John W. Atherton, Jr., President of CityFed, ¶ 2 (hereinafter "Atherton Dec."). The Resolution Trust Corporation ("RTC") was appointed receiver of City Federal. Affidavit of Willem Ridder, ¶ 12 (hereinafter "Ridder Aff."). Since the OTS seized City Federal, CityFed's activities have been focused on "marshalling its assets and resolving its liabilities." Def.Mem. at 3. It maintains only one small office and one employee. CityFed and its former officers and directors are defendants in a number of lawsuits seeking damages substantially in excess of CityFed's assets. *Id.* at 3–4.

The four plaintiffs were involved in various managerial capacities in City Federal's mortgage warehouse lending operation, a wholly owned subsidiary known as City Collateral and Financial Services, Inc. ("City Collateral"). Ridder Aff. at ¶¶ 3–7. The plaintiffs had various responsibilities in connection with a line of credit extended to Northwest Mortgage Company, Inc. ("Northwest"). The failure of the Northwest loan gave rise to substantial losses that are the basis for the RTC action.

### The Northwest Loan

As noted, plaintiffs shared responsibility for the issuance and monitoring of a substantial line of credit to Northwest. Rather than set forth the details of those responsibilities at this point, the court notes only that Northwest failed to comply with the terms of its loan, and that City Federal suffered significant losses on that loan.

In November 1989, City Federal filed an action against Northwest and its owners, charging them with fraud and breach of contract. Affidavit of Richard Harrington, Exh. 1 (hereinafter "Harrington Aff."). On December 6, 1989, judgment was entered against Northwest in the amount of $7,800,905.85. Harrington Aff., Exh. 2. On December 7, 1989, The OTS ordered City Federal closed. The RTC, as receiver for City Federal, filed a proof of claim under a fidelity bond with Fidelity & Deposit Company of Maryland ("F & D") claiming a loss of $7 million under the Northwest mortgage warehousing line of credit.

The proof of claim contained allegations that Ridder, Hurst and DeVany acted fraudulently and dishonestly by continuing the Northwest line of credit despite their knowl-

---

1. Although CityFed itself apparently is not in receivership at this time, it has entered into an agreement with the RTC in yet another related action, *RTC v. CityFed Financial Corp.*, No. 92–5261 (D.N.J.), according to which it may not advance plaintiffs' defense costs without giving the RTC notice and an opportunity to object. In that action alone, the RTC seeks $12 million in damages, an amount that exceeds the estimated value of CityFed's assets. *See* Def.Mem. at 5 n. 2.

edge that Northwest was in material violation of the terms of its loan agreement. Ridder Aff., Exh. 1.

*The RTC Action*

F & D advised plaintiffs and RTC counsel in January 1992 that it had investigated the claim filed by the RTC and had concluded that the dishonesty alleged in the claim was not supported by sufficient evidence. Harrington Aff., Exh 9. On March 6, 1992, the RTC filed suit against F & D, Ridder, Merkle, Hurst, and DeVany, alleging *inter alia* that the four individual officers had "engaged in dishonest and fraudulent acts with the manifest intent to obtain a financial benefit for themselves ... and to cause the Bank to sustain a loss" of some $7 million. RTC Complaint, ¶¶ 19 & 24, Exh. 31 to Harrington Aff.

More specifically, the RTC's complaint contains allegations that the four officers approved loan advances to Northwest against ineligible collateral, concealed Northwest's default from City Federal's credit committee, misrepresented to that committee the status of the Northwest line of credit, misstated to the committee the risk of the Northwest loan, concealed Northwest's criminal activity from City Federal, and falsified City Collateral's records. RTC Complaint, *supra*, at ¶ 19. CityFed notes that after plaintiffs learned in early 1988 that City Federal was seeking to sell City Collateral, Ridder, Hurst and Merkle entered into agreements with City Federal providing that if they remained at City Collateral until the sale was completed, they would receive bonuses totaling over $600,000. *See* Agreements, Exh. I to Declaration of Matthew D. Anhut (hereinafter "Anhut Dec."). The RTC alleges that plaintiffs undertook their fraudulent actions to secure the promised bonuses and their own positions at City Collateral until the sale. Def.Mem. at 15; *see* RTC Complaint, *supra*.

*The Indemnification Provision*

F & D first advised Ridder, Hurst and DeVany of the allegations against them in the claim the RTC filed with F & D in March 1991, and first advised Merkle in April 1991. In an April 5, 1991 letter, Ridder and Hurst made demand on CityFed for indemnification. Harrington Aff., Exh. 4.

Article XI of CityFed's bylaws concerns indemnification and provides in relevant part:

A. Each person who was or is made a party to or is threatened to be made a party to or is involved in any action, suit or proceeding ... by reason of the fact that he or she ... is or was an employee of CityFed or a subsidiary thereof ... shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the Delaware Corporation Law, as the same exists or may hereafter be amended ... against all expense, liability, and loss (including, without limitation, attorneys' fees and related disbursements, judgments, fines, ...) reasonably incurred or suffered by such person in connection therewith.... The right to indemnification conferred in this Paragraph A shall be a contract right and shall include the right to be paid the expenses incurred in defending any such proceeding in advance of its final disposition; *provided, however,* that, if the Delaware Corporation Law so requires, the payment of such expenses ... shall be made only upon delivery to the Corporation of an undertaking ... to repay all amounts so advanced if it shall ultimately be determined that such employee is not entitled to be indemnified under this Paragraph A or otherwise.

B. If a claim under Paragraph A of this Article XI is not paid in full by the Corporation within thirty (30) days after a written claim has been received by the Corporation, the claimant may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim and, if successful in whole or in part, the claimant shall also be entitled to be paid the expense of prosecuting such claim. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in defending any proceeding in advance of its final disposition where the required undertaking, if any is required, has been tendered to the Corporation) that the claimant has not met the standards of conduct which make it permissible under the Delaware Corporation Law for the Corporation to indemnify the claimant for the amount claimed, but

the burden of proving such defense shall be on the Corporation. Neither the failure of the Corporation ... to have made a determination prior to the commencement of such action that indemnification of the claimant is proper ... because he or she has met the applicable standard of conduct set forth in the Delaware Corporation Law, nor an actual determination by the Corporation ... that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that the claimant has not met the applicable standard of conduct.

Bylaws of CityFed Financial Corp., Atherton Dec., Exh. 1, 18–20 (hereinafter "Bylaws").

CityFed declined plaintiffs' request for indemnification on the grounds that neither Ridder nor Hurst had been named as a party or had been threatened that they would be made a party in an action or suit coming under the relevant provision of the Bylaws. Harrington Aff., Exh. 5. In response to repeated requests by all four plaintiffs for indemnification, CityFed reasserted in July 1991 that the claims were premature. Harrington Exh. 8.

Following the commencement of the RTC action, on March 16, 1992, plaintiffs again made demand on CityFed for defense costs and indemnity on the RTC claim. After much correspondence and repeated demands, CityFed notified plaintiffs that before it would advance them their legal costs, it would determine whether any factual basis existed for the allegations made against them in the RTC action, and that it would give plaintiffs the opportunity to demonstrate that they did not breach their fiduciary duties. CityFed maintained that indemnification of officers who had breached fiduciary duties would violate public policy, and claimed that it therefore had to evaluate the basis for the claims made against plaintiffs in the RTC action before making a decision on whether to indemnify plaintiffs. Harrington Aff., Exh. 18 & 19.

By October 26, 1992, CityFed had not made any determination of the factual basis of the RTC's allegations and refused to set a time by which such determination would be made. Harrington Aff., Exh. 22. Defendant contends that it has made the decision not to advance plaintiffs' expenses based on the substantial support it finds for the RTC's allegations that plaintiffs engaged in self-dealing. Defendant further contends that in light of its own precarious financial situation, and of the improbability that it could recoup amounts advanced if plaintiffs are found guilty in the RTC action,[2] advancement of defense costs would constitute a breach of the fiduciary duty its directors owe to the corporation and to its legitimate creditors. Def.Mem. at 16. *See also* Def.Supp.Mem. Defendant also claims that this decision is not necessarily final, and is subject to review should additional facts come to light in the ongoing RTC action that tend to support plaintiffs' claims. *Id.*

In November 1992, plaintiffs filed an action against CityFed in the United States District Court for the Northern District of California to compel advancement of their defense costs. When CityFed sought dismissal of that action on jurisdictional grounds, plaintiffs voluntarily dismissed the action without prejudice and filed the present action in this court. Plaintiffs have incurred approximately $250,000 thus far in their defense of the RTC action.

Plaintiffs move for an injunction requiring CityFed to advance them their reasonable attorneys' fees and defense costs, or in the alternative, for summary judgment on the issue of CityFed's duty to advance those fees and costs. Memorandum of Points and Authorities for Injunction or in the Alternative for Summary Judgment on Behalf of Plaintiffs (hereinafter "Plf.Mem."). CityFed opposes the motion. Memorandum of Points and Authorities of CityFed Financial Corp. in Opposition to Plaintiff's Motion for Injunction or in the Alternative for Summary Judgment (hereinafter "Def.Mem."). Plaintiffs filed a reply to defendant's opposition. Reply to CityFed's Opposition to Motion for Preliminary Injunction or in the Alternative

**2.** Plaintiffs maintain that they should not be required to post security for amounts advanced. They also admit that adequate security if required could well exceed $1 million. Plf. Supp.Mem. at 1 n. 2.

Summary Judgment (hereinafter "Plf. Reply").

On March 28, 1993, the court heard oral argument on the motion and instructed the parties to discuss the possibility of settlement including the posting of security for amounts advanced, and to submit supplemental papers if settlement was not reached. Unable to arrive at a settlement, plaintiffs and defendant have filed supplemental papers. Plaintiffs' Supplemental Memorandum of Law in Further Support of Motion for a Summary Judgment and Preliminary Injunction ("Plf.Supp.Mem."); Supplemental Memorandum Ordered by the Court on March 28, 1994 ("Def.Supp.Mem.").

*Discussion*

The posture of this motion is problematic. Plaintiffs' right to indemnification for defense costs, or their obligation to repay any sums advanced, will not be clear until the charges against them in the RTC action are resolved. Thus, any decision the court makes on this issue for the purposes of this action would be merely an interim declaration of rights subject to change in the companion suit. However, all parties fear that by the time that suit is resolved, no party will have the financial resources to reimburse any other. The distinction between a right to advancement of costs and a right to indemnification for those costs is, then, in this case, largely fictitious. Since the court cannot resolve the indemnification issue in this action, it deems it more appropriate to consider the present motion as an application for a preliminary injunction.

In order to merit a preliminary injunction, the moving party must show "(1) a reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured *pendente lite* if relief is not granted." In addition, the court should consider the possibility of harm to other interested parties, as well as harm to the public interest, if the requested relief is granted. *In re Arthur Treacher's Franchise Litigation*, 689 F.2d 1137, 1143 (3d Cir.1982); *Opticians Ass'n of America v. Indep. Opticians of America*, 920 F.2d 187, 191–92 (3d Cir. 1990). The court will address each factor in turn.

*A. Likelihood of Success on the Merits*

Plaintiffs contend that to show likely success on the merits in this action, they need only show that CityFed's Bylaws require it to advance defense costs even though plaintiffs are charged in the RTC action with breaching their fiduciary duties. However, in light of the fact that defendant faces potential legitimate claims far in excess of its assets, and in light of plaintiffs' refusal or inability to provide security for sums advanced, there is little if any distinction between advancement of defense costs and indemnification for those costs. Thus, to show likely success on the merits of this action, plaintiffs must show that they are likely to be entitled to indemnification at the conclusion of the RTC action.

As noted above, the RTC alleges that the plaintiffs engaged in acts of misconduct and self-dealing. CityFed claims that its counsel, in evaluating plaintiffs' claims for advancement of costs, has found evidence to support these allegations. For example, there is evidence that by late May, 1988, plaintiffs were aware of serious problems with the Northwest loan. *See* Letter from John T. Hurst to Harry Movroydis, President of Northwest, dated May 25, 1988 (Anhut Dec., Exh. H). Soon thereafter, plaintiffs learned that City Federal's assets would be sold, and they secured their bonus agreements with City Federal. *See* Agreements, Anhut Dec., Exh. I. There is evidence that plaintiffs did not thereafter inform appropriate personnel at City Federal of the problems with the Northwest line of credit, and indeed, requested extensions of that line of credit. Atherton Dec. at ¶ 7; McTernan Dec. ¶¶ 4–8; Memos to City Federal Credit Committee from John Hurst (Anhut Dec., Exh. J).

Moreover, there is evidence that on December 22, 1988, Northwest's president informed plaintiff DeVany that Northwest had been using loan proceeds to cover marketing losses in violation of its loan agreement. DeVany has testified that at Hurst's direction, he dated the entry in the Northwest loan history detailing this conversation "December 29, 1988," the day City Federal's assets—but not the Northwest loan—were

sold. DeVany Deposition at 105–106 (Anhut Dec., Exh. G). The court cannot discount the possibility that the date of the entry was manipulated to coincide with the termination of plaintiffs' employment with City Collateral, and with their receipt of the bonuses City Federal had promised them upon the sale of City Collateral's assets.

Plaintiffs vigorously dispute the charge that they concealed Northwest's problems from City Federal. They also argue that any failure to communicate these problems is not causally related to the $7 million loss City Federal suffered. However, the key issue for this action is not whether plaintiffs' actions caused the loss, but whether those actions might vitiate plaintiffs' right to indemnification for their defense costs. As defendant points out, plaintiffs may have forfeited this right if they breached the duties they owed to City Federal, even if their actions did not cause the $7 million loss.

■ Corporate directors and officers found guilty of breaching their fiduciary duties to the corporation may be required to forfeit the compensation they earned while violating their duties. The Delaware Supreme Court has stated the rationale behind this principle as follows:

> If an officer or director of a corporation, in violation of his duty as such, acquires gain or advantage for himself, the law charges the interest so acquired with a trust for the benefit of the corporation, ... while *it denies to the betrayer all benefit and profit.* The rule, inveterate and uncompromising in its rigidity, does not rest upon the narrow ground of injury or damage to the corporation resulting from a betrayal of confidence, *but upon a broader foundation of a wise public policy that, for the purpose of removing all temptation, extinguishes all possibility of profit flowing from a breach of the confidence imposed by the fiduciary relation.*

*Guth v. Loft,* 23 Del.Ch. 255, 5 A.2d 503, 510 (1939) (*quoted in Borden v. Sinskey,* 530 F.2d 478, 498 (3rd Cir.1976) (emphasis added in *Borden*).

Not all courts have interpreted this principle so broadly as to require an officer or director found to have breached his fiduciary duties to forfeit all compensation. The Superior Court of New Castle County in Delaware has held that a corporate director who successfully defended three out of four claims the corporation brought against him was not obliged to forfeit entirely his right to indemnification. *See MCI Communications Corp. v. Wanzer,* Nos. 89C–MR–216, 89C–SE–26, 1990 WL 91100 (Del.Super. Jun. 19, 1990). However, in *Borden v. Sinskey,* the United States Court of Appeals for the Third Circuit upheld the district court's order that a former director who breached his fiduciary duties was required to forfeit all compensation he had received during the time of his breach, even though some of the services he had performed had benefitted his former employer. *Borden,* 530 F.2d at 498. Thus, it is at least possible that even if plaintiffs are found not to have caused the $7 million loss, they may be required to forfeit some or all of their right to indemnification for expenses if they are found to have breached their fiduciary obligations to City Federal.

Failure to disclose to the corporation all relevant information or misrepresentation of relevant information may be considered a breach of the fiduciary duties all directors and officers owe their corporate employers. *National Credit Union Administration Board v. Regine,* 749 F.Supp. 401, 413–14 (D.R.I.1990). Indemnification for defense costs may fairly be considered part of compensation, and may therefore be forfeited in the event plaintiffs are found to have breached their fiduciary duties. *See In re Baldwin–United Corp.,* 43 B.R. 443, 454 (S.D.Ohio 1984). Given the possibility that plaintiffs may have breached their fiduciary duties by failing to disclose knowledge they had about the status of the Northwest loan, and the possibility that if they did breach their duties they may have forfeited their right to indemnification, the court cannot find that plaintiffs have demonstrated they are likely to be entitled to indemnification. Leaving aside the ultimate issue in the RTC action of whether plaintiffs were responsible for the $7 million loss, the court finds that plaintiffs have failed to demonstrate likely success in this action.

### B.  Irreparable Injury

■ Defendants claim that even if plaintiffs could demonstrate likely success on the merits, they cannot demonstrate irreparable injury solely through allegations of financial hardship or potential financial loss.  The Third Circuit has made clear that in the context of an application for injunctive relief, "the injury must be of a peculiar nature, so that compensation in money cannot atone for it."  *A.O. Smith Corp.,* 530 F.2d 515, 525 (3rd Cir.1976) (citations omitted).  However, this principle is not to be read so broadly as to preclude a finding that the loss of a monetary recovery cannot constitute irreparable injury.  *Hoxworth,* 903 F.2d at 206.  Indeed, this court has the power "to protect a potential future damages remedy with a preliminary injunction" so long as the "traditional requirements for obtaining equitable relief" are met.  *Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 197 (3rd Cir.1990).

Plaintiffs argue that because CityFed faces potential liabilities in excess of its assets, they are unlikely to recoup any indemnification costs they are entitled to at the close of the RTC action, and will thereby sustain irreparable injury.  Their concern is well-founded.  As noted above, defendant explains that it has entered into an agreement with the RTC in yet a third action, *RTC v. CityFed,* No. 92–5261 (D.N.J.), pursuant to which CityFed agreed to abstain from certain expenditures, including advancement of plaintiffs' defense costs, before giving the RTC notice and an opportunity to object.  In that suit alone, the RTC seeks damages in excess of $12 million, exceeding CityFed's total assets.  In part because of this agreement, CityFed has been unable to reach an interim settlement with plaintiffs.  Plaintiffs claim that defendants stated in settlement discussions that they would prefer advancing sums pursuant to a court order rather than under a settlement to avoid facing charges that they breached their fiduciary duties by agreeing to advance plaintiffs' costs.  *See* Certification of Robert Elliott at ¶ 6;  Plf. Supp.Mem. at 10.

Nevertheless, the court declines to find that plaintiffs' potentially valid claims should be awarded priority over those of other creditors.  Given the uncertainty of plaintiffs' ability to repay amounts advanced if they are ultimately unentitled to those amounts, the relief plaintiffs seek might well have the effect of giving priority to invalid claims, to the detriment of legitimate creditors.  This could cause irreparable injury to innocent third parties holding valid claims against CityFed.  In contrast, if CityFed is found liable for damages exceeding the value of its assets, plaintiffs may file their claim—albeit contingent on the outcome of the RTC action—to be evaluated along with those of other creditors.  Although their ability to recover the full amount of their defense costs cannot be guaranteed, plaintiffs would still have the opportunity to seek reimbursement from CityFed when their entitlement becomes clear.  In the meantime, CityFed's creditors will have been protected from further depletion of CityFed's assets by potentially unjustified payments to plaintiffs.

The court recognizes the hardship imposed upon plaintiffs by requiring them to bear the costs of their own defense until and unless they are adjudged entitled to indemnification.  This hardship, however, in light of the competing risk of injuring innocent creditors and in light of the possibility that plaintiffs may recover on a valid indemnification claim at the conclusion of the RTC action, does not rise to the level of irreparable injury.  "[F]ailure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction."  *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d at 1143 (*quoted in Morton v. Beyer,* 822 F.2d 364, 371 (3rd Cir.1987)).  Because plaintiffs have failed to demonstrate both these elements, and because of the competing public policy considerations the court has noted in its discussion, the court cannot grant plaintiffs' application for injunctive relief.

### Conclusion

For the foregoing reasons, plaintiffs' motion for a preliminary injunction or for summary judgment is denied.