**Anne P. HENRY, Plaintiff–Appellant,**

v.

**OFFICE OF THRIFT SUPERVISION, Defendant–Appellee.**

**No. 94–3032.**

United States Court of Appeals, Tenth Circuit.

Dec. 16, 1994.

Aaron B. Kahn, Asst. Chief Counsel (Carolyn B. Lieberman, Acting Chief Counsel, Thomas J. Segal, Deputy Chief Counsel, Teresa A. Scott, Sr. Trial Atty., with him on the brief), Office of the Chief Counsel, Office of Thrift Supervision, Washington, DC, for appellee.

Michael Thompson (Brian Fries, with him on the brief) Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for appellant.

Before MOORE, BARRETT and HENRY, Circuit Judges.

BARRETT, Senior Circuit Judge.

Anne P. Henry (Henry) appeals from the district court's Memorandum and Order[1] granting the defendant Office of Thrift Supervision's (OTS) motion to dismiss for lack of subject matter jurisdiction.

### · Facts

■ On appeal from a motion to dismiss, we accept all well-pleaded factual allegations of the complaint as true. *Lafoy v. HMO Colo.*, 988 F.2d 97, 98 (10th Cir.1993); *Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla., Inc.*, 944 F.2d 752, 753 (10th Cir.1991). Accordingly, all facts recited herein are taken exclusively from Henry's Complaint for Declaratory and Injunctive Relief. (Appellant's Appendix, Exh. A).

Henry, of Johnson County, Kansas, was a director and shareholder of both Overland Park Savings and Loan Association (S & L) and Santa Fe Financial Corporation (Santa Fe), a service corporation wholly owned by S & L when, on January 21, 1988, her brother-in-law, Fred N. Coulson, III (Coulson), presented to the board of directors of Santa Fe the opportunity to purchase an office build-

---

1. *Henry v. Office of Thrift Supervision,* 835 F.Supp. 583 (D.Kan.1993).

ing in Westwood, Kansas, known as Westwood Plaza Towers (Towers). Coulson was a professional real estate developer and a member of the boards of directors of both S & L and Santa Fe.

The Santa Fe board, Coulson abstaining, voted to purchase Towers and, as compensation to Coulson for having referred the transaction to Santa Fe, agreed to grant a portion of the profits realized on the transaction to Coulson and his partner. Before consummating the purchase, S & L wrote to the Federal Home Loan Bank (FHLB) seeking approval both of the transaction and Santa Fe's contract with a company partially owned by Coulson to rehabilitate, lease and manage Towers. On November 17, 1988, the FHLB advised S & L that the transaction did not require a filing under applicable regulations.

On December 14, 1988, Santa Fe purchased Towers for $3,880,000. A brokerage company in which Coulson had an interest negotiated a sale on September 1, 1989, of Towers to Midwest Organ Bank for $6,200,-000 and a brokerage fee of two percent was paid by Santa Fe. In another transaction, Santa Fe purchased property in Kansas City, Missouri (Midwest Property) for $1,000,000 which was appraised shortly thereafter for $950,000. Santa Fe expended $193,000 for various zoning and development activities, taxes, and other expenses relative to that property.

In December of 1989, the OTS conducted an examination of S & L and Santa Fe, including the Towers and Midwest Property transactions and made no criticism of those transactions at that time.

In July, 1990, Wilson Siemens, president of S & L, testified adversely to OTS in a lawsuit involving another savings and loan association while an OTS official was present in the courtroom. In February, 1991, OTS undertook another examination of S & L and singled out the Towers and Midwest Property transactions. OTS contended that these transactions were improper because of the fees paid to Coulson.

As a result of an accounting change mandated by OTS, OTS declared that S & L was in violation of federal capitalization require-ments. Discussions between the board of directors of S & L and OTS occurred in 1991 through most of 1992 concerning recapitalization or sale of S & L, including a potential sale to Advance Financial, Inc. (AFI).

On June 5, 1991, OTS wrote to Henry announcing its intention to seek civil money penalties against her as a result of the Towers and Midwest Property transactions. On June 28, 1991, Henry responded and asserted that she had not violated any OTS regulations.

By late July, 1992, OTS demanded of Henry that she pay civil money penalties and, in addition, that she compensate S & L for the "losses" suffered as a result of the Towers and Midwest Property transactions, although no actual losses had occurred. OTS informed Henry that if she did not agree to the imposition of a cease and desist order upon the terms insisted on by OTS, that S & L would be closed and placed into receivership.

Earlier, on July 10, 1992, an internal order finding that S & L was in an unsafe and unsound condition requiring the appointment of a receiver was sent to the Commissioner of the Kansas Savings and Loan Department, but this finding was not disclosed to Henry even though OTS was then representing to Henry that if Henry agreed to OTS's terms for a cease and desist order, OTS would work with the S & L board to effectuate a sale of S & L. Had Henry known that OTS was proceeding with the appointment of a receiver for S & L, she would have terminated her negotiations with OTS concerning the cease and desist order. Further, OTS had advised Henry that it would work with S & L to assist in its recapitalization or sale if Henry agreed to the terms demanded by OTS for the cease and desist order.

On August 7, 1992, AFI submitted to OTS a letter of intent setting forth proposed terms for purchase of newly issued S & L stock, wherein AFI proposed a capital infusion for S & L of cash and certain mortgage servicing rights. OTS regulations permitted the use of certain non-cash assets, including mortgage servicing rights, as capital for a savings and loan institution. However, sometime prior to October 28, 1992, OTS had determined not to allow the use of mortgage

servicing rights as capital for S & L but this fact was not disclosed to Henry.

On October 16, 1992, in reliance upon the OTS representations that it would work with the S & L directors to facilitate recapitalization or a sale of S & L, Henry entered into a Stipulation and Consent to Issuance of an Order of Civil Money Assessment and a Stipulation and Consent to Issuance of an Order to Cease and Desist for Restitution and Other Affirmative Relief. Henry did not stipulate to the facts upon which the orders were based. OTS represented to Henry that the terms of the cease and desist order were intended to make restitution to S & L for the losses which OTS claimed S & L had suffered.

By agreeing to the entry of the cease and desist order, Henry effectively waived her right to contest the charges made by OTS and to establish her innocence of those charges. Henry entered into the agreement for the purpose of eliciting the assistance of OTS in effectuating a recapitalization or sale of S & L. Had she known of OTS's decisions at the time of the agreement, she would not have agreed to the entry of the cease and desist order.

The cease and desist order issued on October 16, 1992, required Henry to make restitution to S & L of $693,189 representing the difference between the book value of the Midwest Property and the cost of acquiring and renovating the property. The order provided that restitution was to be made by Henry's purchase of the Midwest Property for the cash price of $1,200,000. OTS also imposed a civil money penalty of $1,000 on Henry.

On November 3, 1992, OTS notified AFI's president that the financial terms proposed for the sale of newly issued S & L stock were not acceptable, and on November 13, 1992, OTS appointed the Resolution Trust Corporation (RTC) as receiver for S & L and gave immediate control of S & L to RTC. Soon thereafter, RTC notified Henry that it would impose additional conditions upon the sale of the Midwest Property to her and require payments beyond those authorized or contemplated by the cease and desist order. Henry notified the RTC of her willingness to perform according to the terms of the cease and desist order as of the closing date of November 30, 1992, but RTC refused to close without the additional payments it had demanded. Had Henry known of the additional payments required, she would not have agreed to the cease and desist order.

OTS orally threatened Henry with an administrative freeze of her assets if she did not agree to its demands.

In December 1992, Henry initiated this action in the district court against OTS for declaratory and injunctive relief. In Count I, Henry asked the court to declare that there was no basis for the exercise of its asset freeze power by the OTS and to enjoin the OTS from taking any action with regard to Henry's assets or the assessment of additional civil money penalties.

In Count II, Henry alleged that OTS had failed to disclose material facts to her concerning its intention to place S & L into receivership, and of its determination that the terms for the purchase of newly issued S & L stock by AFI would not be approved. Henry relied on these nondisclosures in entering into the agreement with OTS for entry of the cease and desist order, and had she known, she would not have agreed to entry of the cease and desist order and she would have insisted upon her rights to notice, hearing and judicial review.

### District Court Order

In granting OTS's motion to dismiss, the district court held that 12 U.S.C. § 1818(i)(1) prohibited the court from exercising jurisdiction over Henry's complaint. Acknowledging that Henry faced a potentially harsh result, the court held that it was constrained by the unyielding language of § 1818(i)(1):

except as otherwise provided in this section ... no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under [this] section, or to review, modify, suspend, terminate, or set aside any such notice or order.

Observing that Henry had pointed to no provision in § 1818 which would enable the court to exercise jurisdiction notwithstanding

§ 1818(i)(1)'s blanket prohibition, and finding that Henry had not argued that any specific statutory exception applied, the court concluded that it was without subject matter jurisdiction.

The parties agreed that § 1818(h) [2] grants a litigant 30 days from the date of service of a final agency order within which to file a challenge in the court of appeals to a final agency order. Here, the enforcement Order was issued and became effective on October 16, 1992. Thus, Henry had until November 16, 1992, to file her challenge in the court of appeals. The receiver for S & L was appointed on November 13, 1992. Henry did not file her challenge until December 1, 1992, a date clearly beyond the 30–day period provided by § 1818(h).

### Contentions on Appeal

On appeal, Henry argues that "§ 1818(i)(1) does not deprive the district court of subject matter jurisdiction to hear this action for rescission of Agreements for the Issuance of Consent Orders by the OTS." (Brief for Appellant at 7). Henry asserts that (1) the Administrative Procedures Act (APA) confers jurisdiction on the district court; (2) § 1818(i)(1) is part of an integrated administrative hearing process and as such has no application to this action for rescission of Agreement to Consent Order entered without an administrative hearing; and, (3) the district court's construction of § 1818(i)(1) denies her any administrative or judicial forum which raises constitutional problems mandating a narrower construction of the statute.

---

**2.** Section 1818(h) provides:
    (h) Hearings and judicial review
    (1) Any hearing provided for in this section ... shall be held in the Federal judicial district or in the territory in which the home office of the depository institution is located.... After such hearing, and within ninety days after the [agency] has notified the parties ..., it shall render a decision ... and shall issue and serve upon each party ... an order or orders consistent with the provisions of this section. Judicial review of any such order shall be exclusively as provided in this subsection (h) of this section. Unless a petition for review is timely filed in a court of appeals ... the issuing

### Discussion

■ We review questions of law *de novo*. *Williams v. United States*, 957 F.2d 742, 743 (10th Cir.1992). The determination of the district court's subject matter jurisdiction is a question of law which we review *de novo*. *Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269, 1272 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 317, 130 L.Ed.2d 279 (1994).

### I.

Henry claims that the APA "provides for judicial review of final agency action for which there is no other adequate remedy in a court." (Brief for Appellant at 8–9).

OTS argues that the APA does not confer jurisdiction in situations like this where another statute specifically precludes judicial review, and that the Declaratory Judgment Act does not provide jurisdiction where jurisdiction does not already exist. We agree.

■ Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Tafoya v. U.S. Department of Justice, LEAA*, 748 F.2d 1389, 1390 (10th Cir.1984). Congress possesses plenary power to confer or withhold appellate jurisdiction. Parties cannot confer on a federal court jurisdiction which has not been granted by the Constitution and Congress, and parties cannot waive lack of subject matter juris-

---

agency may at any time, upon such notice and in such manner as it shall deem proper, modify, terminate, or set aside any such order.
    (2) Any party to any proceeding under paragraph (1) may obtain a review of any order served pursuant to paragraph (1) of this subsection (other than an order issued with the consent of the depository institution or the institution-affiliated party concerned, ...) by the filing in the court of appeals ... within thirty days after the date of service of such order, a written petition praying that the order of the agency be modified, terminated, or set aside.

diction. *Sosna v. Iowa,* 419 U.S. 393, 398, 95 S.Ct. 553, 556–57, 42 L.Ed.2d 532 (1975). The party seeking to invoke the jurisdiction of a federal court must prove that the case is within the court's subject matter. *McNutt v. General Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

■ While the APA provides judicial review for "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action," it also provides that "[n]othing herein (1) affects other limitations on judicial review ... or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702.

■ Since § 1818(i)(1) precludes judicial review of OTS enforcement orders except under specifically enumerated circumstances[3], none of which are applicable here, Henry's reliance on the APA is misplaced. By its own language, the APA does not confer jurisdiction where another statute denies it. *LaBash v. U.S. Dep't of Army,* 668 F.2d 1153, 1156 (10th Cir.), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2299, 73 L.Ed.2d 1303 (1982). We agree with the district court that the relief sought by Henry places this case within the scope of § 1818(i)(1)'s preclusionary language. Therefore, we hold that the APA does not confer subject matter jurisdiction in this case.

■ Whereas the APA confers jurisdiction in some cases, the Declaratory Judgment Act (DJA) does not itself confer jurisdiction on a federal court where none otherwise exists. 28 U.S.C. § 2201. *See State of N.M. v. Regan,* 745 F.2d 1318, 1322–23 (10th Cir.1984),

cert. denied, 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985); *Amalgamated Sugar Co. v. Bergland,* 664 F.2d 818, 822 (10th Cir. 1981); *Schulke v. United States,* 544 F.2d 453, 455 (10th Cir.1976). Inasmuch as the APA does not confer subject matter jurisdiction on the district court, we hold the DJA inapplicable to this action.

Therefore, the district court correctly concluded that it lacked subject matter jurisdiction to consider Henry's claims.

## II.

■ Henry asserts that § 1818(i)(1) has no application to her claims because it is part of an integrated administrative hearing process. Henry argues that "orders" referred to in § 1818(i)(1) are those issued after an administrative hearing under § 1818(h)(1) and those subject to judicial review under § 1818(h)(2), and that the orders directed at her were not such orders.

Henry relies on this court's decision in *Homeland Stores, Inc. v. Resolution Trust Corp.,* 17 F.3d 1269 (10th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 317, 130 L.Ed.2d 279 (1994), for the proposition that "provisions like § 1818(i)(1) are not to be read in a vacuum, separate from the other portions of the statute which form an integrated administrative process." Henry suggests that a reading of § 1818(i)(1) like that conducted in *Homeland* would show that the consent orders directed against her are not the type of "orders" contemplated by § 1818(i)(1). We disagree.

In *Homeland,* this court determined that a claim brought by a tenant of a shopping center (Homeland) managed by the RTC was not barred by 12 U.S.C. § 1821(d)(13)(D)[4]

---

**3.** Financial Institutions Supervisory Act (FISA) establishes a tripartite regime of judicial review: (1) § 1818(c)(2) provides that within 10 days after service of a temporary order, a bank holding company may seek an injunction in district court restraining enforcement of the order pending completion of the related administrative proceedings; (2) § 1818(h) authorizes court of appeals review of final orders on the application of an aggrieved party; and, (3) § 1818(i)(1) provides that the Board may apply to the district court for enforcement of any effective and outstanding notice or order. 12 U.S.C. § 1818;

*Board of Governors of the Fed. Reserve Sys. of U.S. v. McCorp Financial, Inc.,* 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991).

**4.** Section § 1821(d)(13)(D) reads:
(D) Limitation on judicial review
Except as otherwise provided in this subsection, no court shall have jurisdiction over—
(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [RTC] has been appointed receiver, including assets which the

pending exhaustion of the administrative process provided for under the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA). 17 F.3d at 1275–76. This court held that the term "claim" as used in subsection 1821(d)(13)(D) did not include the type of claim Homeland brought against RTC. *Id.* In reaching its decision, this court concluded that § 1821(d)(13)(D) is "one part of an integrated administrative claims process under FIRREA" and that the jurisdictional ban is "expressly tied to the remainder of the administrative claims process." *Id.* at 1273.

In contrast, as the Supreme Court emphasized in *Board of Governors of Fed. Reserve Sys. of U.S. v. MCorp Financial, Inc.,* 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991), § 1818 provides a comprehensive scheme for judicial review. In § 1818(i) Congress completed the scheme by explicitly precluding jurisdiction in any situation except where it had specifically provided for a particular court to exercise jurisdiction. "[I]n FISA [§ 1818] Congress has spoken clearly and directly: '[N]o court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any [Board] notice or order under this section.'" *Id.* at ——, 112 S.Ct. at 463. The Court explained that "the statute provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction." *Id.* at ——, 112 S.Ct. at 466.

The district court found Henry's claims to be "tantamount to setting aside the consent orders." We agree. Therefore, Henry's claim directly contravenes the language of § 1818(i)(1). Absent any exception to the "clear and convincing" language of the statute, the district court correctly concluded that it lacked jurisdiction.

## III.

■ Henry claims that the district court's construction of § 1818(i)(1) denies her any administrative or judicial forum, thus creating serious constitutional problems. Henry asserts that the statute should be

construed in such a way that jurisdiction is conferred on the district court.

OTS argues that the district court may not review the merits of OTS's enforcement actions. However, OTS admits that it has not attempted to enforce the orders issued against Henry and that should it do so, a district court may determine whether Henry has satisfied the order. (Brief of Appellee at 11 n. 9). OTS concedes that the issue presented by Henry's complaint is whether the consent orders have actually been entered pursuant to the [voluntary] consent of the parties, i.e., whether they are *actually* consent orders. *Id.* at 19, 25, & 26 (emphasis added).

In response to Henry's assertion that there is no record for an appellate review in this case involving her allegations of fraudulent concealment, and that, therefore, 12 U.S.C. § 1818(h) does not grant her judicial review, OTS states:

> The Consent Orders and the stipulations to their entry, at a minimum, constitute the record. To the extent that a party believes that such a record does not fully represent what was before the agency when it determined to enter those Orders, the Rules of Appellate Procedure provide a means to obtain a supplement to the record. *See* Federal Rule of Appellate Procedure 16(b); 28 U.S.C. § 2112(b).... Moreover, should the Court of Appeals see a need to develop additional factual material, it may fashion methods to obtain evidence prior to appellate review or remand to the agency for additional fact finding.

(Brief of Appellee at 29–30).

Henry is correct in her contention that, given her allegations of fraud in the inducement, 12 U.S.C. § 1818(h) does not grant her an effective judicial review. This is so because the record of proceedings before the OTS does not contain any findings of fact relative to Henry's fraud in the inducement defenses. By the same token, OTS's suggestion that Federal Rule of Appellate Procedure 16(b) provides a means to reach the fraud issue is meaningless, simply because there is no record of any determination of

---

[RTC] may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the [RTC] as receiver.

the fraud issue before the agency to be supplemented. Likewise, 28 U.S.C. § 2112(b) simply provides that the record to be filed in the court of appeals consists of the "pleadings, evidence, and proceedings" before the agency.

Thus, it would seem that OTS in effect argues that there is no forum available to Henry absent review pursuant to § 1818(h). We must reject this contention, simply because if, under Kansas law, there was a duty by OTS officials to speak of their intentions not to work with Henry and S & L to facilitate a sale to AFI—instead of issuing an order authorizing the appointment of a receiver for S & L and rejecting the use of mortgage servicing rights as capital for S & L as proposed by AFI—Henry may have stated a valid affirmative defense. (*See* Brief for Appellant at 5).

The Kansas Supreme Court has stated, "We have held fraud is never presumed and must be proven by clear and convincing evidence." *Nordstrom v. Miller,* 227 Kan. 59, 605 P.2d 545, 552 (1980) (citing *Gonzales v. Allstate Ins. Co.,* 217 Kan. 262, 535 P.2d 919 (1975)). The court had previously noted, "[t]he person who asserts fraud must prove it by a preponderance of the evidence and such evidence should be clear, convincing and satisfactory." *Fisher v. Mr. Harold's Hair Lab, Inc.,* 215 Kan. 515, 527 P.2d 1026, 1032 (1974) (citing *Sipes v. Crum,* 204 Kan. 591, 464 P.2d 1 (1970)).

■ Where fraud is plead as an affirmative defense, it must be alleged specifically. Thus, to establish fraud by silence, a party must show by clear and convincing evidence the following elements: (1) that the offending party had knowledge of material facts which the charging party did not have and which the charging party could not have discovered by the exercise of reasonable diligence, (2) that the offending party was under an obligation to communicate the material facts to the charging party, (3) that the offending party intentionally failed to communicate the material facts to the charging party, (4) that the charging party justifiably relied on the offending party to communicate the material

facts, and (5) that the charging party sustained damages as a result of the offending party's failure to communicate the material facts. *DuShane v. Union Nat'l Bank,* 223 Kan. 755, 576 P.2d 674 (1978); *Flight Concepts Ltd. Partnership v. Boeing Co.,* 819 F.Supp. 1535 (D.Kan.1993); *Metal Trading Services of Colorado, Inc. v. Trans-World Services, Inc.,* 781 F.Supp. 1539 (D.Kan.1991) (involving concealment of facts or omissions). Furthermore, the statute of limitations and the parol evidence rule do not bar the affirmative defense of fraud. *See Stapleton v. Mendoza,* 174 Kan. 468, 257 P.2d 113, 115 (1953) (parol evidence rule prohibits the admission of evidence to vary the terms of a written agreement, except where the evidence is offered to show that there had been material misrepresentations or concealments as to what the contract contained or to establish fraud). Therefore, it seems clear that Henry may raise the affirmative defense of fraud and challenge the enforcement of the consent orders should OTS attempt to collect.[5]

**AFFIRMED.**

---

**5.** We render no opinion concerning the success or failure of any affirmative defense of fraud that

Henry may raise against OTS in the event of an enforcement action.