United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued April 6, 1998 Decided July 17, 1998 

 No. 97-5181

 Willem Ridder, et al., 

 Appellants

 v.

 Office of Thrift Supervision and 

 Ellen S. Seidman, Director, 

 Appellees

 Appeal from the United States District Court 

 for the District of Columbia 

 (No. 95cv01656)

 Richard Harrington argued the cause for appellants, with 
whom James H. McGrew was on the briefs.

 Dirk S. Roberts, Assistant Chief Counsel, Office of Thrift 
Supervision, argued the cause for appellees, with whom 
Thomas J. Segal, Deputy Chief Counsel, and Jacqueline H. 
Fine, Trial Attorney, were on the brief.


 Before: Wald, Sentelle and Randolph, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Sentelle.

 Sentelle, Circuit Judge: Four former bank officers appeal 
the district court's dismissal of a lawsuit they initiated to 
enjoin the enforcement of a temporary order to cease and 
desist issued by the Office of Thrift Supervision. We agree 
with the district court that it lacked jurisdiction to consider 
this case, and affirm.

 I. Background

 A.

 In 1989, Congress enacted the Financial Institutions Re-
form, Recovery, and Enforcement Act, Pub.L. No. 101-73, 
103 Stat. 183 ("FIRREA"), in part " '[t]o improve the supervi-
sion of savings associations by strengthening capital, account-
ing and other supervisory standards' and to 'promote, 
through regulatory reform, a safe and stable system of af-
fordable housing finance.' " Transohio Sav. Bank v. Di-
rector, OTS, 967 F.2d 598, 603 (D.C. Cir. 1992) (quoting 
FIRREA s 101(1) & (2), 103 Stat. 187, 12 U.S.C. s 1811 
note). In addition to establishing stricter capital require-
ments for thrifts, FIRREA also consolidated many of the 
powers and duties of two prior regulatory bodies in a newly-
created entity, the Office of Thrift Supervision ("OTS"). See 
American Fed'n of Gov't Employees v. FLRA, 46 F.3d 73, 74 
(D.C. Cir. 1995); CityFed Fin. Corp. v. OTS, 58 F.3d 738, 741 
(D.C. Cir. 1995). Under this statutory regime, when OTS 
determines that "any insured depository institution ... or 
any institution-affiliated party is engaging or has engaged ... 
in an unsafe or unsound practice in conducting the business of 
such depository institution, or is violating or has violated ... 
a law, rule, or regulation, or any condition imposed in writing 
by the agency," it may "issue and serve upon the depository 
institution or such party a notice of charges ... [which] shall 
contain a statement of the facts constituting the alleged 
violation ... and shall fix a time and place at which a hearing 
will be held to determine whether an order to cease and 
desist therefrom should issue against the depository institu-

tion or the institution-affiliated party." 12 U.S.C. 
s 1818(b)(1).

 OTS is statutorily empowered to "issue a temporary order 
requiring the depository institution or such party to cease and 
desist from any ... violation or practice [charged in a section 
1818(b)(1) proceeding] and to take affirmative action ... 
pending completion of such proceedings." 12 U.S.C. 
s 1818(c)(1). It may issue such an order if it

 determine[s] that the violation or threatened violation or 
 the unsafe or unsound practice or practices, specified in 
 the notice of charges served upon the depository institu-
 tion or any institution-affiliated party pursuant to para-
 graph (1) of subsection (b) of this section, or the continu-
 ation thereof, is likely to cause insolvency or significant 
 dissipation of assets or earnings of the depository institu-
 tion, or is likely to weaken the condition of the depository 
 institution or otherwise prejudice the interests of its 
 depositors prior to the completion of the proceedings 
 conducted pursuant to paragraph (1) of subsection (b) of 
 this section....

Id. 

 Congress prohibited courts from reviewing regulated enti-
ties' challenges to OTS-initiated proceedings under most cir-
cumstances. See 12 U.S.C. s 1818(i)(1); CityFed Fin. Corp., 
58 F.3d at 741-42. However, the "depository institution 
concerned or any institution-affiliated party" may appeal to a 
United States district court from a temporary cease-and-
desist order within ten days after being served with the 
order. 12 U.S.C. s 1818(c)(2). On appeal, a district court 
may enjoin such an order in whole or in part. Id. 

 B.

 In 1984, CityFed Financial Corporation ("Holding Compa-
ny"), a savings and loan holding company, was created in 
order to acquire City Federal Savings Bank ("Bank"), a 
federally insured savings institution. City Collateral and 
Financial Services, Inc. ("Subsidiary") is a second tier subsid-

iary of Bank. Appellants Willem Ridder, Lyndon C. Merkle, 
John T. Hurst, and Gregory DeVany are former officers of 
Subsidiary. See Complaint pp 1-4.

 When Holding Company acquired Bank, Holding Compa-
ny--at the insistence of pre-FIRREA regulatory agency Fed-
eral Home Loan Bank Board--agreed to maintain Bank's net 
worth at a level consistent with regulatory requirements, and 
also agreed to infuse additional equity capital into Bank if 
necessary. Holding Company did not live up to these prom-
ises. Thus, in 1989, OTS declared Bank insolvent, and ap-
pointed the Resolution Trust Corporation ("RTC") as Receiv-
er for Bank.

 In 1994, pursuant to 12 U.S.C. s 1818(b)(1), OTS brought 
administrative enforcement proceedings against Holding 
Company and seven of its current and former directors. A 
Notice of Charges and Hearing ("Notice of Charges") 
charged them with letting Bank's net worth plunge below 
regulatory requirements by approximately $118 million. The 
Notice of Charges sought restitution of the $118 million, and 
demanded payment of over $2 million in civil penalties. Ap-
pellants were not named in the Notice of Charges.

 Holding Company's assets dwindled considerably after 
Bank was placed in receivership. Thus, in June 1994, pursu-
ant to 12 U.S.C. s 1818(c)(1), OTS issued a temporary cease-
and-desist order ("Temporary Order") which restricted Hold-
ing Company's use of its assets. OTS justified its issuance of 
the Temporary Order by concluding that Holding Company 
was "likely to cause ... significant dissipation of assets or 
earnings of the depository institution." 12 U.S.C. 
s 1818(c)(1). Under the Temporary Order, which remains in 
effect, Holding Company is entitled to a $15,000 per month 
allowance to cover its operating expenses, and may dip into 
its assets to pay reasonable legal expenses incurred in its own 
defense. The Temporary Order also contains a "hardship" 
provision permitting Holding Company to petition for relief if 
the order's enforcement "threatens to cause undue hardship 


to [Holding Company] in conducting its business or affairs." 1 
Appellants were not named in the Temporary Order.

 In 1992 (two years before the Temporary Order issued), 
the RTC sued appellants for fraud and breach of fiduciary 
duty. These claims had nothing to do with the earlier 
administrative proceedings initiated by OTS. Invoking a 
provision in Holding Company's bylaws requiring Holding 
Company to pay the legal fees and expenses of former 
officers and directors, appellants asked Holding Company to 
front them the attorney fees and costs they expected to incur 
in the RTC fraud litigation. When Holding Company re-
fused, appellants sued it in New Jersey district court to 
compel it to pay the fees. The district court denied appel-
lants' motions for a preliminary injunction and summary 
judgment. Ridder v. CityFed Fin. Corp., 853 F. Supp. 131 
(D.N.J. 1994). The Third Circuit reversed, ruling that Hold-
ing Company must advance appellants' litigation expenses, 
and remanded to the district court for entry of an appropriate 
injunction. 47 F.3d 85 (3rd Cir. 1995). The Third Circuit, 
however, did not address whether the Temporary Order 
might have an impact on its ruling, noting that such matters 
were "a matter for other tribunals to decide," and "purely 
speculative" on the record before it. Id. at 87-88.

 Meanwhile, in a separate action, Holding Company and its 
directors brought a lawsuit in the United States District 
Court for the District of Columbia, seeking to enjoin enforce-

__________
 1 On February 1, 1996, an Administrative Law Judge granted 
OTS's motion for partial summary disposition of its net worth 
maintenance claim against Holding Company, recommending that 
the Director of OTS issue an order forcing Holding Company to pay 
nearly $120 million in restitution to the RTC, as Receiver for Bank. 
Holding Company appealed. On appeal, the Director of OTS 
vacated the ALJ's order, and remanded to the ALJ for further 
proceedings. In doing so, the Director concluded that additional 
factual development was required to determine whether Holding 
Company was unjustly enriched by retaining funds belonging to 
Bank.


ment of the Temporary Order. The district court ruled 
against Holding Company, CityFed Fin. Corp. v. OTS, 919 
F. Supp. 1 (D.D.C. 1994), and we affirmed, 58 F.3d 738 (D.C. 
Cir. 1995). Among other things, we upheld OTS's authority 
to issue the Temporary Order, and concluded that Holding 
Company and its directors had failed to show irreparable 
harm warranting the injunctive relief they were seeking.

 On remand from the Third Circuit, the New Jersey district 
court entered an injunction requiring Holding Company to 
advance appellants their legal expenses. Holding Company 
applied to OTS for payment, but OTS refused, stating that 
the Temporary Order only permitted the disbursement of 
funds to relieve hardship to Holding Company itself. Hold-
ing Company appealed from the district court's injunction, 
and the Third Circuit ruled in its favor. The Third Circuit 
rather colorfully characterized Holding Company's dilemma 
as follows:

 [Holding Company] is ... caught between Scylla and 
 Charybdis; it stands squarely between two diametrically 
 opposed rulings of two United States Courts of Appeals. 
 The first, a ruling from this Court, directed it to pay 
 [appellants'] legal expenses. The second, a decision from 
 the Court of Appeals for the District of Columbia Circuit, 
 upheld the validity of [the Temporary Order] which 
 prevents [Holding Company] from paying those ex-
 penses.

Ridder v. CityFed Fin. Corp., No. 95-5558, slip op. at 4-5 (3rd 
Cir. Apr. 18, 1996) (unpublished opinion). Recognizing that 
the Temporary Order made it impossible for Holding Compa-
ny to comply with the district court's order, the Third Circuit 
vacated the district court's order, and remanded to the dis-
trict court for further proceedings.

 Shortly after we issued our decision in CityFed Fin. Corp., 
Holding Company asked OTS for permission to pay appel-
lants' litigation expenses. OTS refused, stating that neither 
our decision nor that of the Third Circuit compelled it to 
grant the requested hardship relief. It added that payments 
to appellants were not entitled to any priority over the claims 

of Holding Company's other creditors, and that no such 
payments could be made until Holding Company met its net 
worth maintenance obligations.

 Finally, we arrive at the lawsuit that gave rise to this 
appeal. Appellants filed this case in August 1995 in the 
United States District Court for the District of Columbia, 
seeking an injunction prohibiting OTS from enforcing its 
Temporary Order and requiring OTS to authorize Holding 
Company to disburse approximately $450,000 to them for 
attorney fees and costs. OTS and its Director were named as 
defendants in that lawsuit, and are appellees before us. 

 In a Memorandum and Order, the district court concluded 
that it lacked subject matter jurisdiction to consider appel-
lants' claims. The court determined that appellants did not 
qualify as the "depository institution concerned" or an 
"institution-affiliated party" under the statutory provision 
permitting judicial review of temporary cease-and-desist or-
ders. 12 U.S.C. s 1818(c)(2). In reaching this conclusion, 
the court observed that appellants were not parties to the 
underlying administrative proceeding, that they had not been 
charged with violations under section 1818(b)(1), and that 
they had not been served with a temporary cease-and-desist 
order under section 1818(c)(1). After concluding that section 
1818 "does not recognize an independent right to challenge 
the validity of OTS enforcement orders," the district court 
dismissed the case for want of jurisdiction. Memorandum 
and Order at 8.

 Appellants filed a timely appeal from the district court's 
dismissal of their case.2

__________
 2 We note in passing that the district court's Memorandum and 
Order is procedurally defective because it fails to satisfy Rule 58's 
requirement that "[e]very judgment shall be set forth on a separate 
document." Fed. R. Civ. P. 58. This defect, however, has no 
practical effect on this appeal because it is clear that the district 
court intended to render a final, appealable judgment. See Memo-
randum and Order at 9 (ordering "that plaintiffs' complaint be and 
it is hereby dismissed"); see also Spann v. Colonial Village, Inc., 
899 F.2d 24, 32 (D.C. Cir. 1990) ("mechanical application of the 
separate-judgment rule should not be used to require the pointless 

 II. Discussion

 We review the district court's legal conclusion that it lacked 
subject-matter jurisdiction to consider appellants' claims de 
novo. See United States ex rel Findley v. FPC-Boron Em-
ployees' Club, 105 F.3d 675, 681 (D.C. Cir.), cert. denied, 118 
S.Ct. 172 (1997).

 A.

 "To prevent regulated parties from interfering with the 
comprehensive powers of the federal banking regulatory 
agencies, Congress severely limited the jurisdiction of courts 
to review ongoing administrative proceedings brought by 
banking agencies." CityFed Fin. Corp., 58 F.3d at 741. 
Indeed, no court may review such proceedings unless section 
1818 specifically provides for judicial review:

 [E]xcept as otherwise provided in this section no court 
 shall have jurisdiction to affect by injunction or otherwise 
 the issuance or enforcement of any notice or order under 
 [section 1818], or to review, modify, suspend, terminate, 
 or set aside any such notice or order.

12 U.S.C. s 1818(i)(1) (emphasis added).

 Appellants renew their claim that they qualify as 
"institution-affiliated" parties under subsection 1818(c)(2)--an 
exception to section 1818(i)(1)'s general prohibition of judicial 
review--and that their claims are therefore subject to the 
jurisdiction of the district court. If appellants do not qualify 
under subsection (c), the only statutory exception they have 
asserted, "no court shall have jurisdiction" to hear their 
challenge to the Temporary Order. 12 U.S.C. s 1818(i)(1); 
see also Henry v. OTS, 43 F.3d 507, 513 (10th Cir. 1994) ("In 
section 1818(i), Congress ... explicitly preclud[ed] jurisdic-
tion in any situation except where it had specifically provided 

__________
formality of returning to the district court for ministerial entry of 
judgment") (citation omitted). Nonetheless, we again "emphasize 
that, to avoid dispute and promote certainty, it is the better practice 
for the district court to assure as a matter of course the entry of 
each judgment as a separate document." Id.

for a particular court to exercise jurisdiction.") (citing Board 
of Governors v. MCorp Fin., Inc., 502 U.S. 32, 44 (1991)); 
United States v. Spiegel, 995 F.2d 138, 140 (9th Cir. 1993) 
("This statutory language leaves no room to doubt that 
Congress provided only one avenue for challenging the terms 
of an OTS restraining order--an action brought under 12 
U.S.C. s 1818."); Carlton v. Firstcorp, Inc., 967 F.2d 942, 946 
(4th Cir. 1992) ("[I]t seems clear to us that by devising a 
comprehensive scheme governing the oversight of financial 
institutions, from administrative control through judicial re-
view of the administrative agency's actions, and by explicitly 
making the scheme exclusive, Congress intended to exclude 
other methods of interfering with the regulatory action.").

 Appellants propose the following justification for their con-
clusion that they are "institution-affiliated parties" under 12 
U.S.C. s 1818(c)(2). The statute defines "institution-affiliated 
party" to include "any director, officer, employee, or control-
ling stockholder (other than a bank holding company) of, or 
agent for, an insured depository institution." 12 U.S.C. 
s 1813(u). According to appellants, Bank was the only "in-
sured depository institution" affected by the Temporary Or-
der. They assert that Holding Company--the entity named 
in the Notice of Charges and served with the Temporary 
Order--could not be the "depository institution concerned" 
for purposes of the statute, because it is a savings and loan 
holding company, not an "insured depository institution" un-
der section 1813(u). Appellants also assert that three of their 
number were former officers of Bank. (No such claim was 
made in their complaint, which alleges only that appellants 
are former officers of Subsidiary.) As "officers, directors, 
employees or agents" of Bank, then, appellants claim to be 
eligible to bring suit as "institution-affiliated" parties.

 We shall assume for purposes of this discussion that appel-
lants were indeed employees of (and "affiliated" with) Bank, 
an insured depository institution. Subsection (c)(2), the pro-
vision upon which appellants rely, provides that "the deposito-
ry institution concerned or any institution-affiliated party" 
must appeal within ten days after being served with a tempo-


rary cease-and-desist order. In other words, the statute 
contemplates that "the depository institution concerned or 
any institution-affiliated party" must be served with a tempo-
rary cease-and-desist order in order to challenge it in court 
pursuant to subsection (c)(2). In this case, neither appellants 
nor Bank were served with the Temporary Order.

 Furthermore, OTS commences administrative proceedings 
by filing and serving a "notice of charges" on a depository 
institution or institution-affiliated party. See 12 U.S.C. 
s 1818(b)(1) ("If ... any insured depository institution ... or 
any institution-affiliated party is engaging ... in an unsafe or 
unsound practice ... the agency may issue and serve upon 
the depository institution or such party a notice of charges in 
respect thereof."). Neither appellants nor Bank were named 
in or served with the Notice of Charges.

 Because appellants were not served with (or named in) the 
Notice of Charges or the Temporary Order, they are not 
institution-affiliated parties as required by subsection (c)(2). 
See BLACK'S LAW DICTIONARY 1122 (6th ed. 1990) ("A 
'party' to an action is a person whose name is designated on 
record as plaintiff or defendant."). Thus, they are statutorily 
ineligible to file suit under that subsection.

 We reject appellants' attempt to characterize themselves as 
"institution-affiliated parties" because they were affiliated 
with what they call "the only depository institution con-
cerned" in this case, namely Bank. No matter how profoundly 
the Temporary Order may have affected it, Bank could not be 
the "depository institution concerned" in this case. Under 
subsection (c)(2), a depository institution must have been 
served with the notice of charges and the temporary cease-
and-desist order to challenge that order on appeal. See 12 
U.S.C. s 1818(c)(2). It is undisputed that Bank met neither 
of these statutory prerequisites. Even if Bank were a "de-
pository institution concerned" in this case, however, that 
would not alter the fact that appellants were not served with 
the Notice of Charges or the Temporary Order, as they must 
be to prosecute an appeal under subsection (c)(2).


 Appellants also argue that, although subsection (c)(2) uses 
the term "depository institution," Holding Company cannot fit 
this category because it is a savings and loan holding compa-
ny. This a non sequitur. Not only does the statute provide 
that OTS may issue temporary cease-and-desist orders to 
"any bank holding company," 12 U.S.C. s 1818(b)(3), we have 
already concluded that Holding Company was a proper sub-
ject of the Temporary Order and, as such, entitled to appeal 
pursuant to subsection (c)(2). CityFed Fin. Corp., 58 F.3d at 
741-43.

 B.

 Anticipating that the plain language of section 1818(i)(1) 
might bar their claims, appellants argue in the alternative 
that the district court should have exercised jurisdiction 
pursuant to Leedom v. Kyne, 358 U.S. 184 (1958), and its 
progeny. Under Kyne, they argue, district courts may re-
view agency action, even when Congress intended otherwise, 
if a plaintiff makes a "strong and clear" showing that the 
agency has acted contrary to its statutory authority or de-
prived the plaintiff of constitutional rights. McCulloch v. 
Libbey-Owens-Ford Glass Co., 403 F.2d 916, 917 (D.C. Cir. 
1968). Here, appellants argue that the district court should 
have exercised jurisdiction notwithstanding section 1818(i) 
because the statutory ban on judicial review allowed a taking 
of their property without just compensation in violation of the 
Fifth Amendment to the Constitution. In particular, appel-
lants complain that the restrictions of the Temporary Order 
forbade Holding Company from disbursing attorney fees and 
costs to them, even though the Third Circuit had concluded 
that they were entitled to such payments.

 In Board of Governors v. MCorp Fin., Inc., the Supreme 
Court disallowed a district court's exercise of jurisdiction 
under Kyne in a case that involved section 1818(i)'s preclusion 
of judicial review. 502 U.S. 32, 44 (1991). MCorp, a bank 
holding company, filed a lawsuit against the Board of Gover-
nors of the Federal Reserve System ("Board") that sought to 
enjoin the Board's prosecution of two administrative proceed-


ings against it. The district court entered the requested 
injunction, and the Board appealed. The Fifth Circuit deter-
mined that the Board had exceeded its statutory authority 
when it promulgated one of the regulations MCorp was 
charged with violating, and ruled that Kyne authorized the 
district court to enjoin the administrative proceedings that 
had been conducted purportedly without statutory authoriza-
tion.

 The Supreme Court rejected the Fifth Circuit's reading of 
Kyne, and ruled that the district court lacked jurisdiction to 
enjoin the administrative proceedings pending against 
MCorp. The Court concluded that Congress spoke "clearly 
and directly" when it enacted section 1818(i). Id. at 44. This 
provision, continued the Court, contrasted with the statutory 
scheme at issue in Kyne, in which the petitioner had asked 
the court to imply preclusion of judicial review from legisla-
tive silence on the point. The Court read Kyne to "stand[ ] 
for the familiar proposition that only upon a showing of clear 
and convincing evidence of a contrary legislative intent should 
the courts restrict access to judicial review," and determined 
that section 1818(i) "provides us with clear and convincing 
evidence that Congress intended to deny the District Court 
jurisdiction to review and enjoin the Board's ongoing adminis-
trative proceedings." Id. (citation and internal punctuation 
omitted). The Court further noted that, unlike the petitioner 
in Kyne, MCorp had adequate means of review upon a final 
determination by the agency. Id. at 43-44.

 We conclude that MCorp, not Kyne, controls this case. 
First, section 1818(i) unambiguously precludes judicial review. 
See MCorp, supra; see also Hindes v. FDIC, 137 F.3d 148, 
164 (3rd Cir. 1998) ("emphasiz[ing] that an integral factor in 
determining the applicability of the exception is the clarity of 
the statutory preclusion"). Appellants also have failed to 
make a "strong and clear" showing that the issuance of the 
Temporary Order violated their constitutional rights. See 
McCulloch, 403 F.2d at 917.

 Appellants make the case that the Temporary Order de-
prived them of their right to receive attorney fees and costs 


from Holding Company without notice and a hearing; this 
action, conclude appellants, violates the Fifth Amendment's 
Due Process Clause. It has long been settled, however, that 
the Fifth Amendment's Due Process Clause "does not apply 
to the indirect adverse effects of government action." O'Ban-
non v. Town Court Nursing Ctr., 447 U.S. 773, 789 (1980). 
That provision " 'has always been understood as referring 
only to a direct appropriation, and not to consequential 
injuries resulting from the exercise of lawful power.' " Id. 
(emphasis added) (quoting Legal Tender Cases, 79 U.S. 457, 
551 (1871)). The Temporary Order was a lawful exercise of 
OTS's regulatory authority, see CityFed Fin. Corp, 58 F.3d at 
743, that had no direct effect on appellants. It was issued 
against Holding Company in order to restrict Holding Com-
pany's use of its assets pending completion of administrative 
proceedings that OTS had commenced against Holding Com-
pany. As we have emphasized above, appellants were not 
named in the Temporary Order, nor did the Temporary 
Order serve to restrict appellants' use of their own assets. 
Accordingly, any harm the appellants have suffered from the 
issuance of the Temporary Order was a consequential result 
of a lawful action OTS directed towards Holding Company, 
and therefore was no due process violation.

 The Supreme Court has recognized that a person who is 
indirectly affected by government action may have a right to 
a hearing under limited circumstances: "Conceivably, ... if 
the Government were acting against one person for the 
purpose of punishing or restraining another, the indirectly 
affected individual might have a constitutional right to some 
sort of hearing." Town Court, 447 U.S. at 789-90 n.22. 
Appellants assert that OTS was indeed targeting them when 
it issued the Temporary Order, but this unsupported asser-
tion does not meet the standard of a "strong and clear" 
showing of a deprivation of constitutional rights. In any 
event, Town Court also observed that parties suffering an 
indirect adverse effect of government action "clearly have no 
constitutional right to participate in the enforcement proceed-
ings" when the directly regulated party had a "strong finan-
cial incentive to contest [the government's] enforcement deci-


sion." Id. Here, Holding Company, the directly regulated 
party, similarly had a strong interest in challenging the 
Temporary Order, as evidenced by its separate lawsuit chal-
lenging the order.

 Appellants propose another route to judicial review: the 
Administrative Procedure Act. They ask us to invalidate the 
challenged OTS orders as "arbitrary, capricious, an abuse of 
discretion" under the APA. See 5 U.S.C. s 706. However, 
the APA does not confer jurisdiction when another statute 
denies it. See 5 U.S.C. s 702 ("Nothing herein ... confers 
authority to grant relief if any other statute that grants 
consent to suit expressly or impliedly forbids the relief which 
is sought."). Accordingly, in light of our conclusion that 
section 1818(i)(1) precludes judicial review of the Temporary 
Order, we reject appellants' APA claims. Accord Henry v. 
OTS, 43 F.3d 507, 511-12 (10th Cir. 1994).

 III. Conclusion

 Because appellants did not meet the statutory require-
ments for filing this lawsuit, the district court lacked jurisdic-
tion to hear it. Accordingly, we affirm the judgment of the 
district court dismissing for lack of subject-matter jurisdic-
tion.