Willem RIDDER, et al., Appellants,

v.

OFFICE OF THRIFT SUPERVISION
and Ellen S. Seidman, Director,
Appellees.

No. 97–5181.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 6, 1998.

Decided July 17, 1998.

Rehearing Denied Sept. 17, 1998.

Richard Harrington argued the cause for appellants, with whom James H. McGrew was on the briefs.

Dirk S. Roberts, Assistant Chief Counsel, Office of Thrift Supervision, argued the cause for appellees, with whom Thomas J. Segal, Deputy Chief Counsel, and Jacqueline H. Fine, Trial Attorney, were on the brief.

Before: WALD, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Four former bank officers appeal the district court's dismissal of a lawsuit they initiated to enjoin the enforcement of a temporary order to cease and desist issued by the Office of Thrift Supervision. We agree with the district court that it lacked jurisdiction to consider this case, and affirm.

## I. Background

### A.

In 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act, Pub.L. No. 101–73, 103 Stat. 183 ("FIRREA"), in part " '[t]o improve the supervision of savings associations by strengthening capital, accounting and other supervisory standards' and to 'promote, through regulatory reform, a safe and stable system of affordable housing finance.' " *Transohio Sav. Bank v. Director, OTS*, 967 F.2d 598, 603 (D.C.Cir.1992) (quoting FIRREA § 101(1) & (2), 103 Stat. 187, 12 U.S.C. § 1811 note). In addition to establishing stricter capital requirements for thrifts, FIRREA also consolidated many of the powers and duties of two prior regulatory bodies in a newly-created entity, the Office of Thrift Supervision ("OTS"). *See American Fed'n of Gov't Employees v. FLRA*, 46 F.3d 73, 74 (D.C.Cir.1995); *CityFed Fin. Corp. v. OTS*, 58 F.3d 738, 741 (D.C.Cir.1995). Under this statutory regime, when OTS determines that "any insured depository institution . . . or any institution-affiliated party is engaging or has engaged . . . in an unsafe or unsound practice in conducting the business of such depository institution, or is violating or has violated . . . a law, rule, or regulation, or any condition imposed in writing by the agency," it may "issue and serve upon the depository institution or such party a notice of charges . . . [which] shall contain a statement of the facts constituting the alleged violation . . . and shall fix a time and place at which a hearing will be held to determine whether an order to cease and desist therefrom should issue against the depository institution or the institution-affiliated party." 12 U.S.C. § 1818(b)(1).

OTS is statutorily empowered to "issue a temporary order requiring the depository institution or such party to cease and desist from any . . . violation or practice [charged in a section 1818(b)(1) proceeding] and to take affirmative action . . . pending completion of such proceedings." 12 U.S.C. § 1818(c)(1). It may issue such an order if it

determine[s] that the violation or threatened violation or the unsafe or unsound practice or practices, specified in the notice of charges served upon the depository institution or any institution-affiliated party pursuant to paragraph (1) of subsection (b) of this section, or the continuation thereof, is likely to cause insolvency or significant dissipation of assets or earnings of the depository institution, or is likely to weaken the condition of the depository institution or otherwise prejudice the interests of its depositors prior to the completion of the proceedings conducted pursuant to paragraph (1) of subsection (b) of this section. . . .

*Id.*

Congress prohibited courts from reviewing regulated entities' challenges to OTS-initiated proceedings under most circumstances. *See* 12 U.S.C. § 1818(i)(1); *CityFed Fin. Corp.*, 58 F.3d at 741–42. However, the "depository institution concerned or any institution-affiliated party" may appeal to a United States district court from a temporary cease-and-desist order within ten days after being served with the order. 12 U.S.C. § 1818(c)(2). On appeal, a district court may enjoin such an order in whole or in part. *Id.*

### B.

In 1984, CityFed Financial Corporation ("Holding Company"), a savings and loan holding company, was created in order to acquire City Federal Savings Bank ("Bank"), a federally insured savings institution. City Collateral and Financial Services, Inc. ("Subsidiary") is a second tier subsidiary of Bank. Appellants Willem Ridder, Lyndon C. Mer-

kle, John T. Hurst, and Gregory DeVany are former officers of Subsidiary. *See* Complaint ¶¶ 1–4.

When Holding Company acquired Bank, Holding Company—at the insistence of pre-FIRREA regulatory agency Federal Home Loan Bank Board—agreed to maintain Bank's net worth at a level consistent with regulatory requirements, and also agreed to infuse additional equity capital into Bank if necessary. Holding Company did not live up to these promises. Thus, in 1989, OTS declared Bank insolvent, and appointed the Resolution Trust Corporation ("RTC") as Receiver for Bank.

In 1994, pursuant to 12 U.S.C. § 1818(b)(1), OTS brought administrative enforcement proceedings against Holding Company and seven of its current and former directors. A Notice of Charges and Hearing ("Notice of Charges") charged them with letting Bank's net worth plunge below regulatory requirements by approximately $118 million. The Notice of Charges sought restitution of the $118 million, and demanded payment of over $2 million in civil penalties. Appellants were not named in the Notice of Charges.

Holding Company's assets dwindled considerably after Bank was placed in receivership. Thus, in June 1994, pursuant to 12 U.S.C. § 1818(c)(1), OTS issued a temporary cease-and-desist order ("Temporary Order") which restricted Holding Company's use of its assets. OTS justified its issuance of the Temporary Order by concluding that Holding Company was "likely to cause ... significant dissipation of assets or earnings of the depository institution." 12 U.S.C. § 1818(c)(1). Under the Temporary Order, which remains in effect, Holding Company is entitled to a $15,000 per month allowance to cover its operating expenses, and may dip into its assets to pay reasonable legal expenses incurred in its own defense. The Temporary Order also contains a "hardship" provision

permitting Holding Company to petition for relief if the order's enforcement "threatens to cause undue hardship to [Holding Company] in conducting its business or affairs." [1] Appellants were not named in the Temporary Order.

In 1992 (two years before the Temporary Order issued), the RTC sued appellants for fraud and breach of fiduciary duty. These claims had nothing to do with the earlier administrative proceedings initiated by OTS. Invoking a provision in Holding Company's bylaws requiring Holding Company to pay the legal fees and expenses of former officers and directors, appellants asked Holding Company to front them the attorney fees and costs they expected to incur in the RTC fraud litigation. When Holding Company refused, appellants sued it in New Jersey district court to compel it to pay the fees. The district court denied appellants' motions for a preliminary injunction and summary judgment. *Ridder v. Cityfed Fin. Corp.*, 853 F.Supp. 131 (D.N.J.1994). The Third Circuit reversed, ruling that Holding Company must advance appellants' litigation expenses, and remanded to the district court for entry of an appropriate injunction. 47 F.3d 85 (3rd Cir. 1995). The Third Circuit, however, did not address whether the Temporary Order might have an impact on its ruling, noting that such matters were "a matter for other tribunals to decide," and "purely speculative" on the record before it. *Id.* at 87–88.

Meanwhile, in a separate action, Holding Company and its directors brought a lawsuit in the United States District Court for the District of Columbia, seeking to enjoin enforcement of the Temporary Order. The district court ruled against Holding Company, *Cityfed Fin. Corp. v. OTS*, 919 F.Supp. 1 (D.D.C.1994), and we affirmed, 58 F.3d 738 (D.C.Cir.1995). Among other things, we upheld OTS's authority to issue the Temporary Order, and concluded that Holding Company and its directors had failed to show irrepara-

---

**1.** On February 1, 1996, an Administrative Law Judge granted OTS's motion for partial summary disposition of its net worth maintenance claim against Holding Company, recommending that the Director of OTS issue an order forcing Holding Company to pay nearly $120 million in restitution to the RTC, as Receiver for Bank. Hold-

ing Company appealed. On appeal, the Director of OTS vacated the ALJ's order, and remanded to the ALJ for further proceedings. In doing so, the Director concluded that additional factual development was required to determine whether Holding Company was unjustly enriched by retaining funds belonging to Bank.

ble harm warranting the injunctive relief they were seeking.

On remand from the Third Circuit, the New Jersey district court entered an injunction requiring Holding Company to advance appellants their legal expenses. Holding Company applied to OTS for payment, but OTS refused, stating that the Temporary Order only permitted the disbursement of funds to relieve hardship to Holding Company itself. Holding Company appealed from the district court's injunction, and the Third Circuit ruled in its favor. The Third Circuit rather colorfully characterized Holding Company's dilemma as follows:

> [Holding Company] is . . . caught between Scylla and Charybdis; it stands squarely between two diametrically opposed rulings of two United States Courts of Appeals. The first, a ruling from this Court, directed it to pay [appellants'] legal expenses. The second, a decision from the Court of Appeals for the District of Columbia Circuit, upheld the validity of [the Temporary Order] which prevents [Holding Company] from paying those expenses.

*Ridder v. CityFed Fin. Corp.*, 85 F.3d 612, No. 95–5558, slip op. at 4–5 (3rd Cir. Apr. 18, 1996) (unpublished opinion). Recognizing that the Temporary Order made it impossible for Holding Company to comply with the district court's order, the Third Circuit vacated the district court's order, and remanded to the district court for further proceedings.

Shortly after we issued our decision in *CityFed Fin. Corp.*, Holding Company asked OTS for permission to pay appellants' litigation expenses. OTS refused, stating that neither our decision nor that of the Third Circuit compelled it to grant the requested hardship relief. It added that payments to appellants were not entitled to any priority over the claims of Holding Company's other

creditors, and that no such payments could be made until Holding Company met its net worth maintenance obligations.

Finally, we arrive at the lawsuit that gave rise to this appeal. Appellants filed this case in August 1995 in the United States District Court for the District of Columbia, seeking an injunction prohibiting OTS from enforcing its Temporary Order and requiring OTS to authorize Holding Company to disburse approximately $450,000 to them for attorney fees and costs. OTS and its Director were named as defendants in that lawsuit, and are appellees before us.

In a Memorandum and Order, the district court concluded that it lacked subject matter jurisdiction to consider appellants' claims. The court determined that appellants did not qualify as the "depository institution concerned" or an "institution-affiliated party" under the statutory provision permitting judicial review of temporary cease-and-desist orders. 12 U.S.C. § 1818(c)(2). In reaching this conclusion, the court observed that appellants were not parties to the underlying administrative proceeding, that they had not been charged with violations under section 1818(b)(1), and that they had not been served with a temporary cease-and-desist order under section 1818(c)(1). After concluding that section 1818 "does not recognize an independent right to challenge the validity of OTS enforcement orders," the district court dismissed the case for want of jurisdiction. Memorandum and Order at 8.

Appellants filed a timely appeal from the district court's dismissal of their case.[2]

## II. Discussion

■ We review the district court's legal conclusion that it lacked subject-matter jurisdiction to consider appellants' claims *de novo*.

---

2. We note in passing that the district court's Memorandum and Order is procedurally defective because it fails to satisfy Rule 58's requirement that "[e]very judgment shall be set forth on a separate document." Fed.R.Civ.P. 58. This defect, however, has no practical effect on this appeal because it is clear that the district court intended to render a final, appealable judgment. *See* Memorandum and Order at 9 (ordering "that plaintiffs' complaint be and it is hereby dismissed"); *see also Spann v. Colonial Village, Inc.*,

899 F.2d 24, 32 (D.C.Cir.1990) ("mechanical application of the separate-judgment rule should not be used to require the pointless formality of returning to the district court for ministerial entry of judgment") (citation omitted). Nonetheless, we again "emphasize that, to avoid dispute and promote certainty, it is the better practice for the district court to assure as a matter of course the entry of each judgment as a separate document." *Id.*

*See United States ex rel Findley v. FPC–Boron Employees' Club,* 105 F.3d 675, 681 (D.C.Cir.), *cert. denied,* — U.S. ——, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997).

### A.

"To prevent regulated parties from interfering with the comprehensive powers of the federal banking regulatory agencies, Congress severely limited the jurisdiction of courts to review ongoing administrative proceedings brought by banking agencies." *CityFed Fin. Corp.,* 58 F.3d at 741. Indeed, no court may review such proceedings unless section 1818 specifically provides for judicial review:

> *[E]xcept as otherwise provided in this section* no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under [section 1818], or to review, modify, suspend, terminate, or set aside any such notice or order.

12 U.S.C. § 1818(i)(1) (emphasis added).

■ Appellants renew their claim that they qualify as "institution-affiliated" parties under subsection 1818(c)(2)—an exception to section 1818(i)(1)'s general prohibition of judicial review—and that their claims are therefore subject to the jurisdiction of the district court. If appellants do not qualify under subsection (c), the only statutory exception they have asserted, "no court shall have jurisdiction" to hear their challenge to the Temporary Order. 12 U.S.C. § 1818(i)(1); *see also Henry v. OTS,* 43 F.3d 507, 513 (10th Cir.1994) ("In section 1818(i), Congress ... explicitly preclud[ed] jurisdiction in any situation except where it had specifically provided for a particular court to exercise jurisdiction.") (citing *Board of Governors v. MCorp Fin., Inc.,* 502 U.S. 32, 44, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991)); *United States v. Spiegel,* 995 F.2d 138, 140 (9th Cir.1993) ("This statutory language leaves no room to doubt that Congress provided only one avenue for challenging the terms of an OTS restraining order—an action brought under 12 U.S.C. § 1818."); *Carlton v. Firstcorp, Inc.,* 967 F.2d 942, 946 (4th Cir.1992) ("[I]t seems clear to us that by devising a comprehensive scheme governing the over-

sight of financial institutions, from administrative control through judicial review of the administrative agency's actions, and by explicitly making the scheme exclusive, Congress intended to exclude other methods of interfering with the regulatory action.").

Appellants propose the following justification for their conclusion that they are "institution-affiliated parties" under 12 U.S.C. § 1818(c)(2). The statute defines "institution-affiliated party" to include "any director, officer, employee, or controlling stockholder (other than a bank holding company) of, or agent for, an insured depository institution." 12 U.S.C. § 1813(u). According to appellants, Bank was the only "insured depository institution" affected by the Temporary Order. They assert that Holding Company—the entity named in the Notice of Charges and served with the Temporary Order—could not be the "depository institution concerned" for purposes of the statute, because it is a savings and loan holding company, not an "insured depository institution" under section 1813(u). Appellants also assert that three of their number were former officers of Bank. (No such claim was made in their complaint, which alleges only that appellants are former officers of Subsidiary.) As "officers, directors, employees or agents" of Bank, then, appellants claim to be eligible to bring suit as "institution-affiliated" parties.

We shall assume for purposes of this discussion that appellants were indeed employees of (and "affiliated" with) Bank, an insured depository institution. Subsection (c)(2), the provision upon which appellants rely, provides that "the depository institution concerned or any institution-affiliated party" must appeal within ten days after being served with a temporary cease-and-desist order. In other words, the statute contemplates that "the depository institution concerned or any institution-affiliated party" must be served with a temporary cease-and-desist order in order to challenge it in court pursuant to subsection (c)(2). In this case, neither appellants nor Bank were served with the Temporary Order.

Furthermore, OTS commences administrative proceedings by filing and serving a "no-

tice of charges" on a depository institution or institution-affiliated party. *See* 12 U.S.C. § 1818(b)(1) ("If ... any insured depository institution ... or any institution-affiliated party is engaging ... in an unsafe or unsound practice ... the agency may issue and serve upon the depository institution or such party a notice of charges in respect thereof."). Neither appellants nor Bank were named in or served with the Notice of Charges.

Because appellants were not served with (or named in) the Notice of Charges or the Temporary Order, they are not institution-affiliated *parties* as required by subsection (c)(2). *See* BLACK'S LAW DICTIONARY 1122 (6th ed. 1990) ("A 'party' to an action is a person whose name is designated on record as plaintiff or defendant."). Thus, they are statutorily ineligible to file suit under that subsection.

We reject appellants' attempt to characterize themselves as "institution-affiliated parties" because they were affiliated with what they call "the only depository institution concerned" in this case, namely Bank. No matter how profoundly the Temporary Order may have affected it, Bank could not be the "depository institution concerned" in this case. Under subsection (c)(2), a depository institution must have been served with the notice of charges and the temporary cease-and-desist order to challenge that order on appeal. *See* 12 U.S.C. § 1818(c)(2). It is undisputed that Bank met neither of these statutory prerequisites. Even if Bank were a "depository institution concerned" in this case, however, that would not alter the fact that *appellants* were not served with the Notice of Charges or the Temporary Order, as they must be to prosecute an appeal under subsection (c)(2).

Appellants also argue that, although subsection (c)(2) uses the term "depository institution," Holding Company cannot fit this category because it is a savings and loan holding company. This a *non sequitur.* Not only does the statute provide that OTS may issue temporary cease-and-desist orders to "any bank holding company," 12 U.S.C. § 1818(b)(3), we have already concluded that Holding Company was a proper subject of the Temporary Order and, as such, entitled

to appeal pursuant to subsection (c)(2). *City-Fed Fin. Corp.,* 58 F.3d at 741–43.

## B.

■ Anticipating that the plain language of section 1818(i)(1) might bar their claims, appellants argue in the alternative that the district court should have exercised jurisdiction pursuant to *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), and its progeny. Under *Kyne,* they argue, district courts may review agency action, even when Congress intended otherwise, if a plaintiff makes a "strong and clear" showing that the agency has acted contrary to its statutory authority or deprived the plaintiff of constitutional rights. *McCulloch v. Libbey–Owens–Ford Glass Co.,* 403 F.2d 916, 917 (D.C.Cir. 1968). Here, appellants argue that the district court should have exercised jurisdiction notwithstanding section 1818(i) because the statutory ban on judicial review allowed a taking of their property without just compensation in violation of the Fifth Amendment to the Constitution. In particular, appellants complain that the restrictions of the Temporary Order forbade Holding Company from disbursing attorney fees and costs to them, even though the Third Circuit had concluded that they were entitled to such payments.

In *Board of Governors v. MCorp Fin., Inc.,* the Supreme Court disallowed a district court's exercise of jurisdiction under *Kyne* in a case that involved section 1818(i)'s preclusion of judicial review. 502 U.S. 32, 44, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991). MCorp, a bank holding company, filed a lawsuit against the Board of Governors of the Federal Reserve System ("Board") that sought to enjoin the Board's prosecution of two administrative proceedings against it. The district court entered the requested injunction, and the Board appealed. The Fifth Circuit determined that the Board had exceeded its statutory authority when it promulgated one of the regulations MCorp was charged with violating, and ruled that *Kyne* authorized the district court to enjoin the administrative proceedings that had been conducted purportedly without statutory authorization.

The Supreme Court rejected the Fifth Circuit's reading of *Kyne,* and ruled that the

district court lacked jurisdiction to enjoin the administrative proceedings pending against MCorp. The Court concluded that Congress spoke "clearly and directly" when it enacted section 1818(i). *Id.* at 44, 112 S.Ct. 459. This provision, continued the Court, contrasted with the statutory scheme at issue in *Kyne*, in which the petitioner had asked the court to *imply* preclusion of judicial review from legislative silence on the point. The Court read *Kyne* to "stand[ ] for the familiar proposition that only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review," and determined that section 1818(i) "provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceedings." *Id.* (citation and internal punctuation omitted). The Court further noted that, unlike the petitioner in *Kyne*, MCorp had adequate means of review upon a final determination by the agency. *Id.* at 43–44, 112 S.Ct. 459.

We conclude that *MCorp*, not *Kyne*, controls this case. First, section 1818(i) unambiguously precludes judicial review. *See MCorp, supra; see also Hindes v. FDIC*, 137 F.3d 148, 164 (3rd Cir.1998) ("emphasiz[ing] that an integral factor in determining the applicability of the exception is the clarity of the statutory preclusion"). Appellants also have failed to make a "strong and clear" showing that the issuance of the Temporary Order violated their constitutional rights. *See McCulloch*, 403 F.2d at 917.

Appellants make the case that the Temporary Order deprived them of their right to receive attorney fees and costs from Holding Company without notice and a hearing; this action, conclude appellants, violates the Fifth Amendment's Due Process Clause. It has long been settled, however, that the Fifth Amendment's Due Process Clause "does not apply to the indirect adverse effects of government action." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 789, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980). That provision " 'has always been understood as referring only to a *direct appropriation*, and not to consequential injuries resulting from the ex-

ercise of lawful power.' " *Id.* (emphasis added) (quoting *Legal Tender Cases*, 12 Wall. 457, 79 U.S. 457, 551, 20 L.Ed. 287 (1870)). The Temporary Order was a lawful exercise of OTS's regulatory authority, *see CityFed Fin. Corp.*, 58 F.3d at 743, that had no direct effect on appellants. It was issued against Holding Company in order to restrict Holding Company's use of its assets pending completion of administrative proceedings that OTS had commenced against Holding Company. As we have emphasized above, appellants were not named in the Temporary Order, nor did the Temporary Order serve to restrict appellants' use of their own assets. Accordingly, any harm the appellants have suffered from the issuance of the Temporary Order was a consequential result of a lawful action OTS directed towards Holding Company, and therefore was no due process violation.

The Supreme Court has recognized that a person who is indirectly affected by government action may have a right to a hearing under limited circumstances: "Conceivably, ... if the Government were acting against one person for the purpose of punishing or restraining another, the indirectly affected individual might have a constitutional right to some sort of hearing." *Town Court*, 447 U.S. at 789–90 n. 22, 100 S.Ct. 2467. Appellants assert that OTS was indeed targeting them when it issued the Temporary Order, but this unsupported assertion does not meet the standard of a "strong and clear" showing of a deprivation of constitutional rights. In any event, *Town Court* also observed that parties suffering an indirect adverse effect of government action "clearly have no constitutional right to participate in the enforcement proceedings" when the directly regulated party had a "strong financial incentive to contest [the government's] enforcement decision." *Id.* Here, Holding Company, the directly regulated party, similarly had a strong interest in challenging the Temporary Order, as evidenced by its separate lawsuit challenging the order.

■ Appellants propose another route to judicial review: the Administrative Procedure Act. They ask us to invalidate the challenged OTS orders as "arbitrary, capri-

cious, an abuse of discretion" under the APA. *See* 5 U.S.C. § 706. However, the APA does not confer jurisdiction when another statute denies it. *See* 5 U.S.C. § 702 ("Nothing herein ... confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."). Accordingly, in light of our conclusion that section 1818(i)(1) precludes judicial review of the Temporary Order, we reject appellants' APA claims. *Accord Henry v. OTS,* 43 F.3d 507, 511–12 (10th Cir.1994).

### III. Conclusion

Because appellants did not meet the statutory requirements for filing this lawsuit, the district court lacked jurisdiction to hear it. Accordingly, we affirm the judgment of the district court dismissing for lack of subject-matter jurisdiction.