**AMERICAN FAIR CREDIT ASSOCIATION, a Colorado corporation, Plaintiff,**

v.

**UNITED CREDIT NATIONAL BANK, a national credit card bank; and United Insurance Companies, Inc., a Delaware corporation, Defendants.**

**Civil Action No. 00–B–422.**

United States District Court, D. Colorado.

Jan. 12, 2001.

Richard P. Kissinger, G. Harris Adams, Kissinger & Fellman, P.C., Denver, CO, J. Nicholas McKeever, Gordon W. Netzorg, Netzorg & McKeever, P.C., Denver, CO, Allison Herren Lee, Sherman & Howard, United States District Court, Denver, CO, for American Fair Credit Association.

Frederick J. Baumann, Douglas B. Tumminello, Rothgerber, Johnson & Lyons, LLP, United States District Court, Denver, CO, Tim Atkeson, Susan Elaine Schell, Arnold & Porter, Denver, CO, Alan N. Salpeter, Douglas Alan Albritton, Stephen Aaron Miller, Howard J. Roin, Mayer, Brown & Platt, Chicago, IL, Brian G. Eberle, Robert E. Youle, Dennis Jeremy Herman, Williams, Youle & Koenigs, Denver, CO, Ralph I. Miller, Yvette Ostolaza, Angela Christine Wennihan, Weil, Gotshal & Manges, Dallas, TX, for United Credit National Bank, United Insurance Companies, UICI.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Defendants move to dismiss pursuant to Rules 12(b)(1), (6), and Plaintiff moves to amend its complaint. Both motions are opposed. For the reasons stated below, I grant in part and deny in part Defendant's motion, and grant Plaintiff's motion. Jurisdiction exists pursuant to 28 U.S.C. § 1332.

### I.

The following facts are taken from Plaintiff's proposed *Second Amended Complaint* unless otherwise noted. Plaintiff American Fair Credit Association, Inc. (AFCA) provides educational materials to, and services for, individuals seeking to establish and maintain good credit. Defendant United Insurance Companies, Inc. (UICI) is the parent company of Defendant United Credit National Bank (UCNB).

During the 1990s, Plaintiff and Defendant UCNB engaged in a business relationship whereby Defendant UCNB issued credit cards to Plaintiff's members once they met certain eligibility requirements. Defendant UCNB conditioned its continued extension of credit to cardholders who obtained their credit cards through Plaintiff's program on their continued membership in that program. On February 25, 2000, Defendant UCNB entered into a "Consent Order" with the Office of the Comptroller of the Currency of the United States of America (OCC) (February 25, 2000 UCNB Consent Order) which ordered Defendant UCNB to, *inter alia,* "immediately, and until further notice by the OCC, cease and desist all activity and transactions relating to the products of [AFCA], including but not limited to payment of funds for any reason to AFCA."

*Defendants' Motion to Dismiss,* Ex. B at 2.

On June 29, 2000, Defendant UICI entered into a "Consent Order" with the OCC (June 29, 2000 UICI Consent Order) which ordered Defendant UICI to "assume all of [UCNB's] remaining contingent liabilities, and thereafter UICI shall pay-off, compromise, settle or resolve these contingent liabilities at no loss or cost to [UCNB] or the Federal Deposit Insurance Corporation Bank Insurance Fund." *Plaintiff's Response,* Ex. C at 8. The June 29, 2000 UICI Consent Order also required Defendant UICI to provide to Defendant UCNB cash and collateral in the amount of $92,100,000. *See id.,* Ex. C at 3–7. As to the $50,000,000 cash Defendant UICI was required to provide to Defendant UCNB, the June 29, 2000 UICI Consent Order stated: "These funds will be used solely to repay [UCNB's] outstanding maturing deposit liabilities, and to satisfy such other obligations as the Bank is authorized to pay pursuant to the terms of [UCNB's] Consent Orders." *Id.,* Ex. C at 4. The June 29, 2000 UICI Consent Order did not place the same restriction on the remaining $42,100,000 in collateral required to be provided by Defendant UICI. *See id.,* Ex. C at 4–7.

On June 29, 2000, Defendant UCNB entered into another "Consent Order" with the OCC (June 29, 2000 UCNB Consent Order) which stated that the February 25, 2000 UCNB Consent Order would "remain in place and full force and effect." *Defendants' Motion to Dismiss,* Ex. C at 15. The June 29, 2000 UCNB Consent Order also stipulated that the entire $92,100,000 provided by Defendant UICI *could* be used "only for the retirement of [UCNB's] maturing deposit liabilities and the payment of *certain other* liabilities consistent with the terms of the [June 29, 2000 UICI Consent Order] and not otherwise prohibited by the terms of the [February 25, 2000 UCNB Consent Order]." *Id.,* Ex. C at 2. On September 29, 2000, Defendant UICI issued a press release announcing

that "[i]n connection with the sale" "of substantially all of the non-cash assets associated with its United CreditServ credit card business, including its credit card receivables portfolios" "UICI **or certain of its subsidiaries** have retained substantially all liabilities associated with its credit card business, including . . . liabilities associated with pending litigation." *Id.,* Ex. 6 (emphasis added).

Prior to the Consent Orders, Plaintiff filed the initial complaint in this action on February 24, 2000. Plaintiff filed a *First Amended Complaint* on June 27, 2000 in which it alleges claims for declaratory judgment and injunctive relief, breach of contract, breach of implied contract, estoppel, breach of implied duty of good faith and fair dealing in contract, negligence, interference with prospective economic and business advantage, interference with contractual relations, and civil conspiracy. Defendants moved to dismiss the *First Amended Complaint* on October 16, 2000 on the basis that, *inter alia,* the Consent Orders deprive me of subject matter jurisdiction over this case under 12 U.S.C. § 1818(i) which provides that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order".

On November 6, 2000, Plaintiff both responded to Defendants' motion, and moved to further amend its first amended complaint. The proposed *Second Amended Complaint* adds "one or more subsidiaries of Defendant UICI whose true identities remain unknown," *Second Amended Complaint* at para. 4, and "factual allegations and corresponding legal claims regarding events that have occurred since the First Amended Complaint." *Plaintiff's Motion for Leave to Amend its First Amended Complaint* at 4–5. It also "withdraw[s] [Plaintiff's] negligence and civil conspiracy causes of action, and [ ] modifie[s] [Plain-

tiff's] request for declaratory relief." *Id.* at 5.

In a letter to Defendants' counsel dated November 17, 2000, Brian C. McCormally, the Assistant Director of the Enforcement and Compliance Division of the OCC, stated in relevant part:

> We have [ ] had a chance to review [the motion to dismiss and Plaintiff's response]. We feel it is important to advise you that we do not agree with your position that the various Consent Orders entered into by [UCNB] and UICI divest the court of subject matter jurisdiction under 12 U.S.C. § 1818(i) to the extent that it is alleged the court may not hear claims related to liabilities that accrued prior to imposition of the Orders, nor to the extent you are asserting that the [OCC] ordered UICI not to make any payments to ... AFCA.
>
> The reason for our disagreement is simply that the Consent Orders cannot be interpreted as prohibiting UICI from paying any liabilities owed to ... AFCA, including any money damages. To the contrary, the Consent Order entered into by UICI in June 2000 expressly requires that UICI assume all of [UCNB's] liabilities, specifically including any liabilities arising from [UCNB's] receivables portfolios. The purpose of this provision was to ensure that *all* legitimate claims by *all* creditors of [UCNB] be honored by UICI, while [UCNB's] Consent Order continued to prevent dissipation of [UCNB's] assets through payments to its affiliates or to ... AFCA. We agree that [UCNB's] February Consent Order expressly prohibits [UCNB] from making any payment to ... AFCA until further notice from the OCC. However, we are at a loss to understand the assertion in your motion papers, which you reiterated to me in our telephone conversation a few days ago, that UICI was also ordered not to make any payments to ACE or AFCA. Indeed, in the event ... AFCA [is] able to prevail in establishing that a

> liability of [UCNB] or UICI had accrued prior to the imposition of [UCNB's] Consent Order in February 2000, the UICI Consent Order would require UICI to pay that liability.... Accordingly, we are surprised by your assertion that the Consent Orders prohibit both [UCNB] *and* UICI from paying any liabilities that may be owed to ... AFCA.

*Defendants' Reply,* Ex. G at 1–2 (emphases in original) (citation omitted). On January 3, 2001, Plaintiff filed a supplemental brief in which they state that on August 7, 2000 Defendants UCNB and UICI entered into an agreement (Assumption Agreement), consistent with the June 29, 2000 UICI Consent Order, that Defendant UICI would assume all liabilities of Defendant UCNB.

## II.

### A.

▬ Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart,* 39 F.3d 1105, 1110 (10th Cir.1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *F & S Construction Co. v. Jensen,* 337 F.2d 160, 161 (10th Cir.1964). If a Rule 12(b)(1) motion to dismiss merely challenges the sufficiency of the allegations in the complaint, the court must accept those allegations as true, *see Holt v. United States,* 46 F.3d 1000, 1002–1003 (10th Cir.1995), but "without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler,* 442 F.2d 674, 677 (10th Cir.1971). A party may attack the factual assertions regarding subject matter jurisdiction through affidavits and other documents. *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995). Although the district court may consider evidence outside the

pleadings, generally the motion is not converted to one for summary judgment pursuant to Rule 56. *Id.* The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power and Light Co.*, 495 F.2d 906, 909 (10th Cir.1974).

### B.

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." The complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted); accord *Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir.1988). In reviewing the sufficiency of the complaint, a court must presume that the plaintiff's factual allegations are true and construe them in a light most favorable to the ·plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); accord *Meade*, 841 F.2d at 1526.

■ 12(b)(6) must be read in conjunction with Fed.R.Civ.P. 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement need not contain detailed facts, but it must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 · U.S. at 47, 78 S.Ct. 99. A plaintiff is not required to state precisely each element of the claim. 5 Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, at 154–159 (1990). "Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1201 (10th Cir. 1996). A court may not assume that a plaintiff can prove facts that it has not alleged, or that the defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

### III.

#### A.

■ Plaintiff argues that it should be permitted to file a *Second Amended Complaint* because "events [ ] have occurred since the First Amended Complaint" that have a material bearing on this case. *Plaintiff's Motion for Leave to Amend its First Amended Complaint* at 4–5. Plaintiff asserts that two such "events" are: (1) the June 29, 2000 UICI Consent Order which ordered Defendant UICI to "assume all of [UCNB's] remaining contingent liabilities"; and (2) the September 29, 2000 press release issued by Defendant UICI announcing that "[i]n connection with the sale" "of substantially all of the non-cash assets associated with its United Credit-Serv credit card business, including its credit card receivables portfolios" "UICI **or certain of its subsidiaries** have retained substantially all liabilities associated with its credit card business, including ... liabilities associated with pending litigation." *Id.*, Ex. 6 (emphasis added).

■ Courts typically consider several factors in determining whether to allow amendment: "whether the amendment will result in undue prejudice, whether the request was unduly and inexplicably delayed, was offered in good faith, or that the party had sufficient opportunity to state a claim and failed." *Las Vegas Ice and Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1184 (10th Cir.1990). However, "[i]t is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993). Finally, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is

based but fails to include them in the original complaint, the motion to amend is subject to denial." *State Distribs., Inc. v. Glenmore Distilleries Co.,* 738 F.2d 405, 416 (10th Cir.1984).

Here, because a Scheduling Order has not been entered, Plaintiff's motion is not untimely. Defendants do not argue that Plaintiff knew, or should have known, of the factual allegations or the claims it now seeks to add when it filed its *First Amended Complaint.* Under these circumstances, I cannot say that the "request was unduly and inexplicably delayed ... or that [Plaintiff had] sufficient opportunity to state a claim and failed." *Far West Bank,* 893 F.2d at 1184.

■ Defendants argue instead that the motion to amend should be denied because "the Second Amended Complaint does not cure the flaws that require dismissal of the entire complaint for lack of subject matter jurisdiction." *Defendants' Opposition* at 2. In the Tenth Circuit, a proposed amendment should be denied as futile " '[w]here a complaint, as amended, would be subject to dismissal.' " *Mountain View Pharmacy v. Abbott Laboratories,* 630 F.2d 1383, 1389 (10th Cir.1980) (quoting *DeLoach v. Woodley,* 405 F.2d 496, 497 (5th Cir.1968)). Accordingly, I will apply Defendants' motion to dismiss to Plaintiff's proposed *Second Amended Complaint* to determine the futility of the proposed amendment.

### B.

■ Defendants argue that Plaintiff's *Second Amended Complaint* must be dismissed because 12 U.S.C. § 1818(i)(1) deprives this court of subject matter jurisdiction. Specifically, Defendants contend that Congress specifically intended to deprive courts of jurisdiction over cases the resolution of which would "affect" consent orders issued by the OCC. In addition, Defendants claim that only the OCC may bring a claim to enforce a consent order.

Plaintiff responds that the "statutory authority" exception to Congress' withdrawal of jurisdiction applies here because the OCC "exceeded a plain and unambiguous constitutional prohibition in circumstances where, as here, no adequate alternative judicial review or remedy exists for the unlawful activity's victim." *Plaintiff's Response* at 11 (citing *Breen v. Selective Serv. Local Bd. No. 16,* 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970); *Oesterich v. Selective Serv. Local Bd. No. 11,* 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958)). Specifically, Plaintiff argues that because the OCC failed to give it notice and an opportunity to be heard prior to issuing the February 25, 2000 UCNB Consent Order, that order's prohibition of Defendant UCNB from making "payment of funds for any reason to AFCA," *Defendants' Motion to Dismiss,* Ex. B at 2, effectively deprived Plaintiff of property without due process of law in violation of the Fifth Amendment. Defendants' argument, and Plaintiff's response thus raise two issues: (1) does Section 1818(i)(1) preclude any of Plaintiff's claims; and (2) if so, does such an outcome violate the Fifth Amendment's Due Process Clause and thereby trigger the "statutory authority" exception? I will address each question in turn.

#### i.

12 U.S.C. § 1818(i)(1) states

The appropriate Federal banking agency may in its discretion apply to the United States district court, or the United States court of any territory, within the jurisdiction of which the home office of the depository institution is located, for the enforcement of any effective and outstanding notice or order issued under this section or under section 1831o or 1831p–1 of this title, and such courts shall have jurisdiction and power to order and require compliance herewith; but except as otherwise provided in this section or under section 1831o or 1831p–1 of this title no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any

notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order. 12 U.S.C. § 1818(i)(1). In *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.,* 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991), the Supreme Court held that Section 1818(i)(1) "provides ... clear and convincing evidence that Congress intended to deny the District Court jurisdiction" over consent orders. Similarly, the Tenth Circuit has held that "[i]n § 1818(i) Congress completed the [comprehensive scheme for judicial review contained in § 1818] by explicitly precluding jurisdiction in any situation except where it had specifically provided for a particular court to exercise jurisdiction." *Henry v. Office of Thrift Supervision,* 43 F.3d 507, 513 (10th Cir.1994). Consequently, Supreme Court and Tenth Circuit authority agree that Congress' withdrawal of jurisdiction over consent orders in Section 1818(i)(1) is far-reaching. Plaintiff does not seemingly dispute this conclusion insofar as it argues in its response that the "statutory authority" exception is applicable. In any event, I will address in turn the effect of Section 1818(i)(1) on Plaintiff's (1) claims against Defendants UICI and XYZ Corporation, (2) first claim for declaratory relief against Defendant UCNB, and (3) second through eighth claims against Defendant UCNB.

a.

Based on the interpretation of Section 1818(i)(1) in *MCorp* and *Henry,* Plaintiff's claims against Defendants UICI and XYZ Corporation are not precluded by any of the Consent Orders. As to Plaintiff's claims against Defendant XYZ Corporation, it does not appear that this putative Defendant is a party to any of the consent orders. Accordingly, Section 1818(i)(1) cannot preclude jurisdiction over Defendant XYZ Corporation.

As to Plaintiff's claims against Defendant UICI, the June 29, 2000 UICI Consent Order specifically ordered Defendant UICI to "assume all of [UCNB's] remaining contingent liabilities, and thereafter UICI shall pay-off, compromise, settle or resolve these contingent liabilities at no loss or cost to [UCNB] or the Federal Deposit Insurance Corporation Bank Insurance Fund." *Plaintiff's Response,* Ex. C at 8. The June 29, 2000 UICI Consent Order does not prohibit Defendant UICI from making payments to Plaintiff, as Defendants maintain. The provision of the June 29, 2000 UCNB Consent Order requiring Defendant UCNB to use funds provided by Defendant UICI "only for the retirement of [UCNB's] maturing deposit liabilities and payment of certain other liabilities ... not otherwise prohibited by the terms of the" February 25, 2000 UCNB Consent Order applies only to the $92,100,000 the June 29, 2000 UICI Consent Order required Defendant UICI to provide to Defendant UCNB. *Defendants' Motion to Dismiss,* Ex. C at 2. It does not apply to Defendant UICI's assumption of Defendant UCNB's remaining contingent liabilities. Accordingly, subject matter jurisdiction exists with respect to Plaintiff's claims against Defendants UICI and XYZ.

In addition, to the extent the August 7, 2000 Assumption Agreement exists between Defendants UCNB and UICI, it is arguable that I could order Defendant UICI to pay damages incurred as a result of actions undertaken by Defendant UCNB. Under these circumstances, I would be enforcing the Assumption Agreement, and not the June 29, 2000 UICI Consent Order. Although Section 1818(i)(1) makes clear that only the OCC has the authority to enforce the requirement in the June 29, 2000 UICI Consent Order that Defendant UICI "assume all of [UCNB's] remaining contingent liabilities," *Plaintiff's Response,* Ex. C at 8, it says nothing about jurisdiction over agreements reached between private entities pursuant to a consent order. *See* 12 U.S.C. § 1818(i)(1) ("The appropriate Federal banking agency may in its discretion apply

to the United States district court, or the United States court of any territory, within the jurisdiction of which the home office of the depository institution is located, for the enforcement of any effective and outstanding notice or order issued under this section.... [N]o court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order").

That Plaintiff has not produced the Assumption Agreement, or specifically identified its contents, is not dispositive. As outlined in Plaintiff's Supplemental Filing, Defendants denied the existence of the Assumption Agreement on December 8, 2000. Plaintiff only became aware of its existence when the OCC provided Plaintiff with copies of correspondence written by the OCC to Defendants. In those letters, the OCC references the August 7, 2000 Assumption Agreement. Plaintiff can hardly be blamed for Defendants' failure to produce, or otherwise admit to the existence of, the Assumption Agreement. In any event, accepting Plaintiff's allegations of fact as true as I must, *see Holt*, 46 F.3d at 1002–1003; *Meade*, 841 F.2d at 1526, *see also Plaintiff's Second Amended Complaint* at para. 102 ("On information and belief, in connection with the voluntary liquidation of UCNB and the termination of its national bank status, UICI has agreed to assume all of UCNB's contingent liabilities, including liabilities relating to pending litigation"), I will not grant Defendants' motion merely on this basis.

b.

Plaintiff's declaratory judgment claim against Defendant UCNB would not "affect ... the ... enforcement of" the orders issued against Defendant UCNB. Plaintiff seeks a declaration that Defendant UCNB did not terminate its contract with Plaintiff properly and, consequently, any purchaser of Defendant UCNB is bound by the contract. *See Second Amended Complaint* at para. 60. The February 25, 2000 UCNB Consent Order required Defendant UCNB to "rescind,

within thirty days of the effective date of this Order, all contracts or agreements not reached at arm's length, and shall similarly rescind all contracts or agreements whose terms and conditions are not demonstrably fair and reasonable to the Bank." *Defendants' Motion to Dismiss*, Ex. B at 3. However, Defendant UCNB has not indicated that it rescinded the contract with Plaintiff on such a basis. Consequently, the declaratory relief sought by Plaintiff is not precluded by the consent orders.

c.

▇ Plaintiff's second through eighth claims against Defendant UCNB, on the other hand, must be dismissed for lack of jurisdiction. If this case went forward as currently pled and Plaintiff prevailed, Defendant UCNB would be required to pay money damages included in the judgment in direct contravention of the February 25, 2000 UCNB Consent Order that Defendant UCNB "cease and desist all activity and transactions relating to the products of [AFCA], including but not limited to payment of funds *for any reason* to AFCA." *Defendants' Motion to Dismiss*, Ex. B at 2 (emphasis added). Because such an outcome would "affect ... the ... enforcement of an[ ] order" issued by the OCC, 12 U.S.C. § 1818(i)(1), jurisdiction does not exist over those claims.

The OCC's legal conclusion that jurisdiction exists over any disputes that "accrued prior to the imposition of [UCNB's] Consent Order in February 2000" may be correct as far as it goes. *Defendants' Reply*, Ex. G at 1–2 (emphases in original) (citation omitted). Even if jurisdiction exists to consider such disputes, the unambiguous language of the February 25, 2000 UCNB Consent Order strips me of the authority to order Defendant UCNB to pay damages, irrespective of when the legal claims arose. Consequently, I must grant Defendants' motion on Plaintiff's second through eighth claims against Defendant UCNB.

ii.

■ The next question is whether dismissing Plaintiff's second through eighth claims against Defendant UCNB based on 12 U.S.C. § 1818(i) violates the Due Process Clause of the Fifth Amendment, thereby triggering the "statutory authority" exception first identified by the Supreme Court in *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). I conclude that it does not.

In *Kyne*, the Supreme Court held that the federal district court had jurisdiction to review a National Labor Relations Board (NLRB) action despite a statutory provision intended to preclude such review because the NLRB had acted "in excess of its delegated powers and contrary to a specific prohibition in the [National Labor Relations] Act." *Kyne*, 358 U.S. at 188, 79 S.Ct. 180. Subsequently, "[i]n considering whether to proceed under *Kyne*, courts have emphasized that the case provides an exception of 'very limited scope,' to be 'invoked only in exceptional circumstances.'" *United States Dep't of Interior v. FLRA*, 1 F.3d 1059, 1061 (10th Cir.1993) (citations omitted); *see also Boire v. Greyhound Corp.*, 376 U.S. 473, 481, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964) ("The *Kyne* exception is a narrow one."). According to the Tenth Circuit,

> agency action will only fall within the exception created by *Kyne* when the agency's determination is 'made in excess of its powers,' when the agency 'disobeyed the express command of [its organic act] ... and in doing so ... acted in excess of its powers,' when the agency order is 'an attempted exercise of power that had been specifically withheld,' and when it is 'agency action taken in excess of delegated powers.'

*United States Dep't of Interior*, 1 F.3d at 1061 (quoting *Kyne*, 358 U.S. at 185, 186–87, 189, 190, 79 S.Ct. 180). Although no Tenth Circuit case of which I am aware has addressed whether the *Kyne* exception applies to agency actions that exceed Constitutional, as opposed to statutory, limita-

tions, there is no principled reason why it should not. *See, e.g., Zipp v. Geske & Sons, Inc.*, 103 F.3d 1379, 1382–83 (7th Cir.1997) ("a district court may enjoin agency action [under *Kyne*] that amounts to a 'plain violation' of a constitutional right.") (quoting *Squillacote v. International Bhd. of Teamsters, Local 344*, 561 F.2d 31, 39 (7th Cir.1977)). *See also Webster v. Doe*, 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) ("where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear.... We require this heightened showing in part to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.") (citations omitted).

Both the Supreme Court in *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991), and the Tenth Circuit in *Henry v. Office of Thrift Supervision*, 43 F.3d 507 (10th Cir.1994), have touched on the question of whether application of 12 U.S.C. § 1818 can violate the Fifth Amendment's Due Process Clause and thereby trigger *Kyne*'s "statutory authority" exception. Both courts suggested that *Kyne*'s exception would be implicated if application of Section 1818 "wholly deprive[d] [an entity] of a meaningful and adequate means of vindicating its [ ] rights." *MCorp*, 502 U.S. at 43, 112 S.Ct. 459 (where MCORP sought to enjoin an administrative proceeding brought against it by the Board of Governors of the Federal Reserve System (BOG), MCORP was not so "wholly deprive[d]" because it could seek review of any decision by the BOG that rendered it an "aggrieved party" under 12 U.S.C. § 1818(h)); *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 509–10 (10th Cir.1994) (where Henry claimed that she was fraudulently induced into signing a consent order by the Office of Thrift Supervision, and Section 1818 denied direct review of the consent order, Henry was not so "wholly deprive[d]" be-

cause she could indirectly attack the consent order by pleading fraud as an affirmative defense in the event the OTS sought to enforce the consent order). In both cases, however, the individual/entity seeking judicial review had been the object of the governmental action.

In contrast, when an individual/entity is not the object of governmental action, no Fifth Amendment injury occurs. In *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), the Supreme Court held that "the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action," *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 789, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), unless "the Government [ ] act[ed] against one person for the purpose of punishing or restraining another." *Id.* at 789 n. 22, 100 S.Ct. 2467. Absent such extenuating circumstances, the Due Process Clause of the Fifth Amendment applies " 'only to a direct appropriation, and not to consequential injuries resulting from the exercise of lawful power. It has never been supposed to have any bearing upon, or to inhibit laws that indirectly work harm and loss to individuals.' " *Id.* at 789, 100 S.Ct. 2467 (quoting *Legal Tender Cases*, 79 U.S.(12 Wall.) 457, 551, 20 L.Ed. 287 (1870)).

Here, any harm to Plaintiff as a result of the consent orders is indirect or consequential. Plaintiff was not a party to any of the consent orders, and it cannot credibly argue that the OCC "act[ed] against [Defendants] for the purpose of punishing or restraining [Plaintiff]." *Id.* at 789 n. 22, 100 S.Ct. 2467. In addition, Plaintiff does not argue that the OCC acted beyond its authority in entering into the consent orders. *Town Court* thus dictates that Plaintiff's Fifth Amendment argument must fail and, consequently, the *Kyne* "statutory authority" exception does not apply.

The decision of the only Court of Appeals of which I am aware to address the application of the Fifth Amendment's Due Process Clause in the same context reached the same result. *See Ridder v. Office of Thrift Supervision*, 146 F.3d 1035 (D.C.Cir.1998). In *Ridder*, the District of Columbia Circuit addressed whether an OCC-issued temporary cease and desist order that prevented an employer from honoring its contractual obligation to an employee to pay his legal fees violated the Fifth Amendment's Due Process Clause. *Ridder*, 146 F.3d at 1040–41. The District of Columbia Circuit held that the Supreme Court's holding in *Town Court* controlled, and whatever effect the OCC decision had on the employee was "indirect" or "consequential." *Id.*

Even if Plaintiff somehow suffered a direct injury from the OCC's action, *Kyne* would not require that I exercise jurisdiction over Plaintiff's second through eighth claims against Defendant UCNB. Plaintiff cannot complain that dismissing these claims against Defendant UCNB "wholly deprive[s][it] of a meaningful and adequate means of vindicating its [ ] rights." *MCorp*, 502 U.S. at 43, 112 S.Ct. 459. Based on my foregoing rulings, Plaintiff can still pursue the Second through Eighth claims against Defendant UICI based on the Assumption Agreement. Consequently, Plaintiff still has the opportunity to "vindicat[e] its [alleged] rights." *Id.* For the foregoing reasons, dismissing Plaintiff's second through eighth claims against Defendant UCNB neither violates the Due Process Clause of the Fifth Amendment, nor triggers *Kyne*'s "statutory authority" exception.

### C.

■ At oral argument, Defendants argued for the first time that Plaintiff's *Second Amended Complaint* must be dismissed because Plaintiff has not yet exhausted its administrative remedies. Specifically, Defendants assert that because Defendant UCNB has agreed to liquidate, Plaintiff must first present its claims to the Liquidating Agent before it

can pursue an action in federal court. Defendants claim that my decision in *Marketplace/Ken Caryl Partners v. Victorio Inv. Co.*, 778 F.Supp. 29 (D.Colo.1991) supports this argument. I disagree.

In *Marketplace*, the Resolution Trust Corporation (RTC) had been appointed the receiver of the key defendant. Under those ·circumstances, I applied 12 U.S.C. § 1821(d)(13)(D) which states:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). The "Corporation" referred to in Section 1821(d)(13)(D) is either the Federal Deposit Insurance Corporation (FDIC) or the RTC. *See* 12 U.S.C. § 1811(a) ("There is hereby established a Federal Deposit Insurance Corporation (hereinafter referred to as the 'Corporation'"); 12 U.S.C. § 1441a(b)(4)(A) ("[T]he [Resolution Trust] Corporation shall have the same powers and rights to carry out its duties with respect to institutions described in paragraph (3)(A) as the Federal Deposit Insurance Corporation has under sections 11, 12, and 13 of the Federal Deposit Insurance Act [12 U.S.C.A. §§ 1821, 1822, and 1823] with respect to insured depository institutions (as defined in section 3 of the Federal Deposit Insurance Act) [12 U.S.C.A. § 1813]")).

Here, in contrast, neither the RTC nor the FDIC has been appointed the receiver of Defendant UCNB. Accordingly, Section 1821(d)(13)(D)'s exhaustion requirement does not apply, and *Marketplace* is distinguishable on its facts. Because Defendants have not cited any statutory provision or case law indicating that under the circumstances here Plaintiff must exhaust any available administrative remedies before pursuing its claims in court, I will not dismiss Plaintiff's claims on this basis.

### D.

Based on the foregoing, Plaintiff's "'complaint, as amended, would [not] be subject to dismissal.'" *Mountain View Pharmacy v. Abbott Laboratories*, 630 F.2d 1383, 1389 (10th Cir.1980) (quoting *DeLoach v. Woodley*, 405 F.2d 496, 497 (5th Cir.1968)). Consequently, and for the reasons stated above, Plaintiff's motion to amend is granted.

### E.

One other matter warrants comment. In their motion, Defendants failed to identify the requirement in the June 29, 2000 UICI Consent Order that Defendant UICI assume all of the contingent liabilities of Defendant UCNB. In addition, although Defendants purported to produce the June 29, 2000 UICI Consent Order in their motion to dismiss, they did not include the page on which the assumption requirement is written. Only when Plaintiff responded and attached the *entire* June· 29, 2000 UICI Consent Order did I become aware of the assumption requirement. Finally, Defendants also failed to identify or attach the Assumption Agreement in either their motion to dismiss or reply. Defendants should have identified and produced both the assumption requirement in the June 29, 2000 UICI Consent Order, and the Assumption Agreement, as their duty of candor requires. I cannot condone or approve such apparent tactics.

Accordingly, IT IS ORDERED THAT:

(1) Plaintiff's motion for leave to amend its first amended complaint in GRANTED;

(2) Defendants' motion is GRANTED IN PART and DENIED IN PART; and

(3) the second through eighth claims against Defendant UCNB in the *Second Amended Complaint* are DISMISSED WITH PREJUDICE.